DAVENPORT et al. v. MOORE et al.

(Circuit Court, S. D. Iowa, C. D. July 15, 1896.)

CIRCUIT COURT—JURISDICTION—ANNULLING JUDGMENT OF STATE COURT.

The circuit court of the United States, where the requisite diverse citizenship exists, and the amount involved is over $2,000, has jurisdiction to entertain a suit and enter a decree which, as between the parties, shall set aside, annul, and vacate a judgment of a state court, and the proceedings taken and rights acquired thereunder, upon the ground that such judgment was procured by fraud, although, by the statutes of the state, exclusive jurisdiction to entertain such a suit is vested in a particular court of the state.

## On Exceptions to Answers.

In 1892, defendants Moore and Crooks began, in the District court of Boone county, Iowa, an action at law against plaintiffs herein, for indebtedness alleged to exist for commissions on sale of real estate belonging to the above-named plaintiffs. A writ of attachment issued therein against property of these plaintiffs, who were therein alleged to be nonresidents of the state, and was levied on an 80-acre tract belonging to these plaintiffs in said Boone county. Such proceedings were had as that judgment was in said action rendered for $312 and costs, and the land levied upon was ordered sold on special execution. When two years had elapsed from rendition of said judgment, said defendants Moore and Crooks had execution issued and lands sold by sheriff thereunder. Defendant Mather bid in said lands for amount of judgment, interest, and costs. He assigned his sheriff's certificate to defendant Marshall, who, at expiration of year of redemption, took a sheriff's deed for said land, and deeded an undivided half interest therein to defendant Crow. Notice of pendency of said action was published, according to statutory provisions, in a newspaper in Boone county. The bill herein alleges that defendants Moore and Crooks had no dealings whatever with plaintiffs, who were residents of the state of New York; that no commissions were due; and that no indebtedness existed. One Foley, residing in Illinois, was the agent of plaintiffs, and had charge of their Boone county lands. Correspondence, exhibited with petition, shows that the claim for commissions was made by defendants Moore and Crooks to said Foley, who denied any right of said defendants to same. Without particularizing the numerous allegations of the lengthy bill filed herein, it may be said that such bill contains, in detail, charges that said judgment was procured by defendants by fraud, and upon false testimony; that no indebtedness whatever existed from these plaintiffs to said defendants; that said defendants purposely concealed from said Foley and these plaintiffs, whose address they well knew, and knew them to be men of large means, all notice, information, and knowledge of the commencement and pendency of said action, and of the rendition of judgment therein; that neither these plaintiffs nor their agent, Foley, had any notice, information, or knowledge of said Boone county action, said judgment, said sale of said land, or of said certificate or deeds relating thereto, until said Foley, after said deed to said Crow, attempted to pay the taxes on said lands, as he had for years been doing, when he found said Crow had paid said taxes, and, on examination as to why said Crow had paid the same, Foley learned for the first time of said action, judgment, sale, etc., and thereupon forthwith notified plaintiffs, who immediately brought this suit; that the delay of two years in issuing execution on said judgment was purposely and fraudulently had by said defendants, for the purpose of having the two years allowed by Iowa statutes to defendants served by publication only to come into the action and set aside judgment so taken on default, and to defend the action,—of having said two years wholly expire before these plaintiffs should become aware of the existence of said judgment, and thus prevent their opening up suit, and for a like purpose no notice or information was given either these plaintiffs, whose agents defendants alleged they had been, or their agent, Foley, of the sale of the land, the issuance of sheriff's certificate, or the like; that said defendants knew that, if these

plaintiffs or said Foley had known of the same, proper steps would have been taken to save said land, which, it is alleged, at time it was sold for said judgment, was valuable land, of over $3,000 in value; that defendants Mather, Marshall, and Crow, at the time of said bid, the issuance of said certificate, and the execution of said deeds, were colluding with said defendants Moore and Crooks; and that said Moore and Crooks are now, and during said certificate and deed proceedings were, interested with said other defendants in purchase of said land, etc., as part owners thereof, etc. The prayer is that the levy of writ of attachment, the judgment, levy of special execution, sheriff's certificate of sale and deed, and deed to Crow, be held and decreed to be fraudulent, null, and void, and canceled of record, and title to said land quieted in these plaintiffs, or, as alternative relief, that said judgment be set aside, a trial had on the merits, and then relief as before prayed, and that, if plaintiffs are found not entitled to the land, or same cannot be restored to them, they have judgment against defendants Moore and Crooks for the value of said lands, to wit, $3,000. The defendants Moore and Crooks and defendants Mather, Marshall, and Crow filed separate answers. Admitting that proceedings were had, as charged, in said Boone district court, and that defendants Marshall and Crow hold the title to said land, they deny all charges of fraud, fraudulent concealment, etc. The portion of said answers to which plaintiffs have filed exceptions relates to and challenges the jurisdiction of this court, and denies that this court has the right to annul, set aside, or interfere with said Boone county judgment, or to grant relief asked herein, if any can be granted plaintiffs. Plaintiffs' exceptions relate to that portion of the answers which attack the jurisdiction of this court.

Gatch, Connor & Weaver, for exceptions.

Crooks & Snell and Jordan & Brackett, opposed.

WOOLSON, District Judge (after stating the facts as above). For the purpose of the present consideration, the portions of said answers to which exceptions are taken may be considered together. If the position therein taken is correct, this court, at the threshold of this suit, should decline to take any action herein, and dismiss the bill. This court takes judicial notice of the statutes of this state and of the construction thereof by the supreme court of the state. Owings v. Hull, 9 Pet. 607, 625; Bank v. Francklyn, 120 U. S. 747, 751, 7 Sup. Ct. 757; Gormley v. Bunyan, 138 U. S. 623, 635, 11 Sup. Ct. 453. It would seem, therefore, that, instead of reciting hæc verba in the several answers the state statutes quoted therein, the preferable practice would be to file a demurrer to bill, relating to the lack of jurisdiction in the court in the points stated (Shiras, Eq. Prac. pp. 25, 26, §§ 36–38), since no matter, not apparent on the face of the bill, is stated, except the statutes of the state, of which the court takes notice without the same being set out. However, as the points which might have been raised by demurrer to bill are presented by the present method, I proceed to their consideration.

The answers herein, to portions of which exceptions are taken, substantially concede that the district court of Boone county, Iowa, could have taken jurisdiction of the bill in equity in this action presented. Under the decision of Clark v. Ellsworth, 84 Iowa, 525, 51 N. W. 31, there can scarcely exist any doubt as to such jurisdiction. The case therein presented is, to a degree exceptionally unusual, "on all fours" with case at bar. For illustrations of other cases somewhat analogous, as to holding by the supreme court of Iowa with reference to jurisdiction of equity to cancel, etc., judgment procured by fraud, see Dady v. Brown, 76 Iowa, 528, 41 N. W.

209, and Searle v. Fairbanks, Morse & Co., 80 Iowa, 307, 45 N. W. 571. And in Payne v. Hook, 7 Wall. 425, 430, the supreme court of the United States declare:

"The absence of a complete and adequate remedy at law is the only test of equity jurisdiction, and the application of this principle to a particular case must depend on the character of the case as disclosed in the pleadings."

Said Chief Justice Marshall, in Insurance Co. v. Hodgson, 7 Cranch, 332:

"Without attempting to draw any precise line to which courts of equity will advance, and which they cannot pass, in restraining parties from availing themselves of judgments obtained at law, it may be safely said that any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party might have availed himself at law, but was prevented by fraud or accident, unmixed with any fraud or negligence in himself or agents, will justify an application to a court of chancery."

Manifestly, from the bill in case at bar, since the time has elapsed when application at law could be made to disturb the judgment complained of, relief against the judgment could only be in equity. The answers herein, in the portions to which exceptions have been filed, assert that (1) under the Iowa statutes and the settled judicial interpretation and established practice in the courts of Iowa, the district court of Boone county, Iowa, in which the judgment was rendered, has exclusive jurisdiction of an action to declare fraudulent, annul, and set aside the judgment assailed in the bill herein; and (2) that this court has no jurisdiction to hear, determine, or decree as to the validity of said judgment, or to set aside, annul, or vacate the same, the sale made thereunder, or the sheriff's certificate, or deed executed under said sale, or grant the relief herein prayed.

It may be conceded, at least for the purposes of this suit, that the first point above stated, if restricted to the state courts, is correct, viz. that, of the state courts in Iowa, the Boone district court has, under the statutes and settled judicial practice in Iowa, sole and exclusive jurisdiction to entertain a bill which seeks a decree declaring fraudulent, and annulling, vacating, and setting aside, because of fraud in its procurement, a judgment rendered in that court. And if the plaintiffs were seeking in the state courts of Iowa the relief they ask in their bill in this case, they would be compelled to seek such relief in the district court of said Boone county. But does it thereby follow that the circuit court of the United States, for the district within which Boone county is located, is without jurisdiction to entertain a suit and enter a decree which, as between the parties to its said suit, shall not be equally effective, and afford substantially the same relief to the parties before it? This question is contained in the second point above named.

Two classes of action are distinguished in the decisions rendered by the supreme court of the United States. The distinction between them is pointed out in Barrow v. Hunton, 99 U. S. 80, 82. Hunton had recovered in a Louisiana state court a judgment against one Goodrich, Barrow's intestate. Goodrich brought in said court an action, under the statutes of the state, to annul said judgment. This latter action was removed to the circuit court of the United

States for that district, and on final hearing the bill was dismissed. On appeal to the supreme court of the United States the point was urged that the removal from the state court was illegal, and that the federal court had no jurisdiction of the action. Justice Bradley, in delivering the unanimous decision of the court, says:

"The question presented with regard to the jurisdiction of the circuit court is whether the proceeding to procure nullity of the former judgment in such a case as the present is or is not in its nature a separate suit, or whether it is a supplementary proceeding, so connected with the original suit as to form an incident to it, and substantially a continuation of it. If the proceeding is merely tantamount to the common-law practice of moving to set aside a judgment for irregularity, or to a writ of error, or to a bill of review or an appeal, it would belong to the latter category, and the United States court could not properly entertain jurisdiction of the case. Otherwise, the circuit courts of the United States would become invested with power to control the proceedings in the state courts, or would have appellate jurisdiction over them in all cases where the parties are citizens of different states. Such a result would be totally inadmissible. On the other hand, if the proceedings are tantamount to a bill in equity to set aside a decree for fraud in the obtaining thereof, then they constitute an original and independent proceeding, and according to the doctrines laid down in Gaines v. Fuentes, 92 U. S. 10, the case might be within the cognizance of the United States courts. * * * In the one class there would be a mere revision of errors and irregularities, or of the legality and correctness of the judgments and decrees of the state courts; and in the other class, the investigation of a new case, arising from new facts, although having relation to the validity of an actual judgment or decree, or of the plaintiff's right to claim any benefit by reason thereof."

The case at bar falls within the latter named class of cases,—"a bill in equity to set aside a [judgment] for fraud in the obtaining thereof." It is not, therefore, open to the objections above urged against the first class, as being in its nature merely to correct errors or irregularities, etc.; but it "constitutes an original and independent proceeding." In this respect, therefore, it is within the class of cases of which the United States courts may take jurisdiction. Is the attack here made, the relief herein sought, open to the claim of defendants that plaintiffs seek to set aside and vacate the judgment assailed, which was rendered in the Boone district court? In Arrowsmith v. Gleason, 129 U. S. 86, 9 Sup. Ct. 237, certain lands in Ohio, inherited by plaintiff, were sold by his guardian, under orders therefor regularly obtained by the guardian from the proper probate court, and the sales were held in due form and regularly confirmed by such court. The bill attacked the order of sale as invalid, prayed the guardian's deeds thereunder be declared void, and demanded an accounting at the hand of the guardian of rents and profits. The gist of the grounds for such relief is alleged to be the fraud of the guardian. This suit was brought in the United States circuit court, which sustained demurrer to the bill and dismissed the suit. In the brief of counsel for appellee (page 92, 129 U. S.), counsel, while not denying "the right of courts of general jurisdiction to set aside their own judgments and decrees, on bills of review, for errors apparent on the record, or original bills in the nature of bills of review, for fraud in obtaining the judgments or decrees, where such bills are part of the recognized practice of courts," specifically presented and urged that "the circuit court of the United States has no power to

grant the specific prayer of the bill, and set aside and vacate the orders of the probate court of Defiance county, and declare the same void and of no effect." With reference to this point the supreme court say (page 98, 129 U. S., and page 240, 9 Sup. Ct.):

"But it is insisted that the circuit court of the United States, sitting in Ohio, is without jurisdiction to make such a decree as is specifically prayed for, namely, a decree setting aside and vacating the orders of the probate court of Defiance county. If by this is meant only that the circuit court cannot by its orders act directly upon the probate court, or that the circuit court cannot compel or require the probate court to set aside or vacate its own orders, the position of the defendant could not be disputed. But it does not follow that the right of the purchaser in his lifetime, or of his heirs since his death, to hold these lands, as against the plaintiff, cannot be questioned in a court of general equitable jurisdiction upon the ground of fraud. If the case made by the bill is clearly established by proof, it may be assumed that some state court, of superior jurisdiction and equity powers, and having before it all the parties interested, might afford the plaintiff relief of a substantial character. But whether that be so or not, it is difficult to perceive why the circuit court is not bound to give relief according to the recognized rules of equity, as administered in the courts of the United States, the plaintiff being a citizen of Nevada, the defendants citizens of Ohio, and the value of the matter in dispute, exclusive of interest and costs, being in excess of the amount required for the original jurisdiction of such courts."

And again (page 99, 129 U. S., and page 241, 9 Sup. Ct.):

"While there are general expressions in some cases apparently asserting a contrary doctrine, the late decisions of this court show that the proper circuit court of the United States may, without controlling or annulling the proceedings of state courts, give such relief, in a case like the one before us, as is consistent with the principles of equity."

Gaines v. Fuentes, 92 U. S. 10, was an action brought in the state court in Louisiana, under the statutes of that state, to annul a will which had been regularly probated. The action was brought in the court which had entered the decree establishing the will and admitting it to probate. In that action an application was made, in form as required by the United States statutes, to remove the action to the federal court for that district. This application the state court denied, holding, among other reasons for its action, that the United States court could not take jurisdiction of the subject-matter of the controversy. On final hearing, decree was entered annulling the will and revoking the probate. The supreme court of the state affirmed the action of the court below. The case was then taken on writ of error from the state supreme court to the supreme court of the United States. As stated in brief of counsel (page 13) the points presented are two: (1) That the state court had exclusive jurisdiction of the subject-matter of the controversy; and (2) the United States court could not take jurisdiction of the action. On these two points it was contended that the action of the state court in denying the application to remove the case to the United States court was correct. The United States supreme court decided these points were not well taken, reversed the judgment of the supreme court of Louisiana, and directed that court to reverse the judgment of the lower state court and order the cause transferred to the United States circuit court in accordance with the application theretofore filed therein. In the opinion (page 18) we find the following statement:

"The constitution imposes no limitation upon the class of cases involving controversies between citizens of different states, to which the judicial power of the United States may be extended; and congress may, therefore, lawfully provide for bringing, at the option of either party, all such controversies within the federal judiciary."

Marshall v. Holmes, 141 U. S. 589, 594, 12 Sup. Ct. 62, was a case where plaintiff had commenced, in the proper state court in Louisiana, an action to set aside, annul, and avoid 23 judgments which defendant had obtained against her in said state court. During the proceedings leading up to trial, an application, under the removal statutes then in force, was made for removal of the suit to the United States circuit court of that district. The application was denied, the case heard in the state court, and appeal therefrom taken to appellate state court. On writ of error taken from decision rendered in this appeal to the supreme court of the United States, the point is squarely made by counsel, as ground for affirmance of action of state appellate court (page 594, 141 U. S.):

"Second. The removal should not have been allowed, because the complaint practically seeks to have the federal court review the judgment of the state court in causes which were exclusively within the jurisdiction of the state court, and which that court has finally decided."

Upon this subject the supreme court say (page 596, 141 U. S., and page 64, 12 Sup. Ct.):

"But it is contended that it was not competent for the circuit court of the United States, by any form of decree, to deprive Mayer [the judgment creditor] of the benefits of the judgments at law, and that Mrs. Marshall could obtain the relief asked for only in the court in which the judgments at law were rendered. Is it true that a circuit court of the United States, in the exercise of equity powers, and where diverse citizenship gives jurisdiction over the parties, may not in any case deprive a party of the benefit of a judgment fraudulently obtained by him in a state court, the circumstances being such as would authorize relief by the federal court, if the judgment had been rendered by it, and not by the state court?"

After a review of previous decisions of the supreme court, that court say (page 599, 141 U. S., and page 65, 12 Sup. Ct.):

"These authorities would seem to place beyond question the jurisdiction of the circuit court to take cognizance of the present suit, which is none the less an original, independent suit because it relates to judgments obtained in the court of another jurisdiction. While it cannot require the state court to set aside or vacate the judgments in question, it may, as between the parties before it, if the facts justify such relief, adjudge that Mayer [the judgment creditor] shall not enjoy the inequitable advantages obtained by his judgments. A decree to that effect would operate directly upon him. It would simply take from him the benefits obtained by fraud."

The court concludes the opinion as follows:

"These principles control the present case, which, although involving rights arising under judicial proceedings in another jurisdiction, is an original, independent suit for equitable relief between the parties; such relief being grounded on a new state of facts, disclosing not only imposition upon a court of justice in procuring from it authority to sell an infant's land when there was no necessity therefor, but actual fraud in the exercise, from time to time, of the authority so obtained. As the case is within the equity jurisdiction of the circuit court, as defined by the constitution and laws of the United States, that court may by its decree lay hold of the parties, and compel them to do what, according to the principles of equity, they ought to do, thereby securing and establishing the rights of which plaintiff is alleged to have been deprived by fraud and collusion."

And the supreme court reversed the decree of the appellate state court, and remanded it, with directions to order the judgment of the lower state court reversed, thus directing the removal of the cause on application theretofore made to the United States circuit court for trial.

As to what effect, if any, upon the jurisdiction which this court might otherwise take on bill herein, is had by the statement, assuming it correct, presented in the portion of answers to which exceptions are taken,—that by statutory legislation, judicial interpretation, and settled practice of the courts of Iowa, a bill assailing the Boone county judgments can only be brought in the courts of that county,—we may answer: (1) This court contains Boone county within its territorial jurisdiction, as established by congressional enactment. In this respect it does not occupy, as to Boone county, the position which a state court not having Boone county within its territorial jurisdiction would occupy. (2) But, even though the Boone county judgment in question had been rendered in a court which by state statute had exclusive jurisdiction of the subject-matter of the action which terminated in said judgments, the circuit court of the United States for the district would have jurisdiction of a proper bill which, because of fraud in the procurement of same, seeks to annul said judgment and to avoid the effect thereof, as against the successful parties to such judgment and others who, with knowledge of and participancy in such fraud, are beneficiaries thereunder.

The case of Johnson v. Waters, 111 U. S. 640, 4 Sup. Ct. 619, was a creditors' bill brought in the circuit court of the United States for Louisiana, against testamentary executors and heirs. "The main object of the bill is to set aside as fraudulent and void certain sales of the testator's lands made by the testamentary executor to defendants, and to have the said lands resold in due course of administration for the purpose of paying debts due plaintiff and other creditors, and for an account of assets and debts, an injunction, and a receiver." The estate had been administered upon in the probate court, which had exclusive jurisdiction of the subject-matter. The executor had made his final report and been discharged. All the proceedings appear to have been on their face regular, and in due conformity to law. The gist of the complaint was that the proceedings were the result of fraud and collusion between the executor and heirs, for the purpose of permitting the estate to be wholly exhausted in favor of the heirs, and thereby to prevent any portion of it from going to outside creditors. The supreme court, finding this fraud, etc., proven, while affirming the general effect of the decree below, so modify it as to declare null and void, as against the plaintiff and other creditors of the estate of the testator, the sales of real estate theretofore made by the testamentary executor, and which had been reported to and approved by said probate court, and deeds theretofore duly executed to purchasers thereat, which had also been approved by said probate court, and to refer to a master to take and state an account of the assets belonging to the said testator's estate, and to ascertain and schedule the debts that shall be

proven, to resell said real estate so far as necessary, and to pay the debts remaining unpaid after application of personal property of estate, etc. In the opinion the supreme court say (page 667, 111 U. S., and page 633, 4 Sup. Ct.):

"The next question is whether the complainant is in a situation to contest the validity of the sale by the present suit. It is contended that he is concluded by the proceedings in the probate court of Carroll parish, which is alleged to have had exclusive jurisdiction of the subject-matter, and its decision is alleged to be conclusive against all the world, but especially against the complainant, who was a party to the proceedings. The administration of Gen. Morgan's succession undoubtedly belonged to the probate court of the parish of Carroll, and in a general sense it is true that the decisions of that court in the matter of the succession are conclusive and binding, especially upon those who are parties. But this is not universally true. The most solemn transactions and judgments may, at the instance of the parties, be set aside or rendered inoperative for fraud. It is generally parties that are the victims of fraud. The court of chancery is always open to hear complaints against it, whether committed in pais or in or by means of judicial proceedings. In such cases the court does not act as a court of review, nor does it inquire into any irregularities or errors of proceeding in another court, but it will scrutinize the conduct of the parties, and if it finds that they have been guilty of fraud in obtaining a judgment or decree, it will deprive them of the benefit of it, and of any inequitable advantage they have derived under it."

Gaines v. Fuentes, supra, was the annulling of a will, and revoking the decree establishing its probate. Arrowsmith v. Gleason, supra, was to set aside sales made by guardian of minor, and deeds thereunder, of real estate in Ohio, which had been accompanied with all apparent regularity and due form of law, under the direction and approval of the proper probate court. But, aside from the fact that these cases were brought to review, annul, etc., proceedings in courts to which the state statutes had given exclusive jurisdiction of the subject-matter, and as to which the federal court took approved jurisdiction, we find in different decisions of the supreme court of the United States conclusive announcement that a state cannot by legislation deprive the circuit courts of the United States of the jurisdiction in equity to review the proceedings of state courts, where the facts otherwise justify a court of equity in taking jurisdiction. Thus, in Payne v. Hook, 7 Wall. 425, 430:

"We have repeatedly held that the jurisdiction of the courts of the United States over controversies between citizens of different states cannot be impaired by the laws of the states which prescribe the modes of redress in their courts, or which regulate the distribution of their judicial power. If legal remedies are sometimes modified to suit the changes in the laws of the states, it is not so with equitable. The equity jurisdiction conferred on the federal courts is the same as that the high court of chancery in England possesses, is subject to neither limitation nor restraint by state legislation, and is uniform throughout the different states of the Union."

This statement is quoted approvingly in Arrowsmith v. Gleason, supra.

In Marshall v. Holmes, the court (page 598, 141 U. S., and page 65, 12 Sup. Ct.) approvingly quote from Barrow v. Hunton, 99 U. S. 80, 85, the following:

"If the state legislatures could, by investing certain courts with exclusive jurisdiction over certain subjects, deprive the federal courts of all jurisdiction, they might seriously interfere with the right of the citizen to resort

to those courts. The character of the cases themselves is always open to examination for the purpose of determining whether, ratione materiæ, the courts of the United States are incompetent to take jurisdiction thereof. State rules on the subject cannot deprive them of it."

Nor can that portion of the answers herein avail defendants which asserts the regularity of the proceeding in the Boone county district court, and that the judgment therein, and all sales, etc., thereunder, were in due form of law. If this judgment was procured under the circumstances narrated in plaintiffs' bill, no reason appears why the remarks of Chief Justice Marshall, supra, should not apply. In Graffam v. Burgess, 117 U. S. 180, 186, 6 Sup. Ct. 686, it is said:

"It is insisted that the proceedings were all conducted according to law. Very likely. Some of the most atrocious frauds are committed in that way. Indeed, the greater the fraud intended, the more particular the parties to it often are to proceed according to the strictest forms of law."

The further point is presented, in that part of the answers to which exceptions have been taken, that even though this court, in the exercise of its equity powers, should find the proper basis, under averments of the bill, for annulment, as to parties thereto, of the Boone county judgment, and said sale of real estate sold thereunder, and the cancellation of the several deeds which are described in the bill, yet, under the statutes of Iowa, there would remain the trial of the action brought in the Boone district court by defendants Moore and Crooks. It must be conceded that if this court shall find basis therefor, and shall, in effect, cancel said deeds, annul said sale, and avoid the effect of said judgment, the effective status of said Boone county action would be its standing on petition of Moore and Crooks, with the writ of attachment therein levied on the lands in question. Under the denials of plaintiffs herein, the issues of that action might then stand for trial and determination. I do not deem it essential, if, indeed, proper, at this point, the only matter under consideration being the exceptions to answers herein, to attempt to outline what I deem the proper method of procedure thereafter, if plaintiffs shall be entitled, under the proof that may be introduced herein, to relief as above. But we may assume, from the decision in Johnson v. Waters, supra, that the court will not be powerless to afford full justice between the parties to the Boone county action, all of whom are parties to this suit. It may be safely assumed that the equity powers of this court do not stop short of ability to decree that which justice and equity may demand in the premises.

And in this connection reference may appropriately be made to Cowley v. Railroad Co., 159 U. S. 569, 16 Sup. Ct. 127. That case was brought in the courts of the territory of Washington, under statutes closely similar to the statutes of Iowa, which are set out in defendants' answers, concerning vacation of judgments, obtained through fraud of successful party, etc. On the admission of Washington as a state this case was transferred to the United States circuit court for that district, and treated as a proceeding in equity. That court dismissed the suit, holding that plaintiffs had at law an

adequate remedy, and that "it was not according to equity practice to decree that a judgment be vacated and annulled, or to act directly upon the case, in which an unjust and void judgment had been rendered, and that plaintiff should have applied by petition or motion in the original case." The court, in reversing the order of dismissal, say (page 579, 159 U. S., and page 129, 16 Sup. Ct.):

"The difficulty in the case seems to have arisen from the fact that, after the removal of the case to the circuit court of the United States, it was treated as a suit in equity, subject to all the limitations attaching to the equitable jurisdiction of the federal courts, instead of a special proceeding to obtain the benefit of the statute."

And, on page 582, 159 U. S., and page 130, 16 Sup. Ct.:

"But while, after the removal of the case to the circuit court of the United States, it might properly be docketed and tried as an equity suit, it still remained, so far as the rights of the plaintiff were concerned, a special proceeding under the territorial statute; and the powers of the court in dealing with it were gauged, not merely by its general equity jurisdiction, but by the special authority vested in its own courts by the statutes of the territory. Had the case never been removed to the circuit court, it would have proceeded in the state court as a special proceeding under the territorial statute, and we are of opinion that, upon its removal to the circuit court, petitioner lost no right to which he would have been entitled had the case not been removed. Even if it were treated as in form a bill in equity, the right of the complainant would be gauged as well by the statute under which the bill was filed as by the general rules of equity jurisprudence. * * * While the federal court may be compelled to deal with the case according to the forms and modes of proceeding of a court of equity, it remains in substance a proceeding under the statute, with the original rights of the parties unchanged."

As to whether this court, in the exercise of its jurisdiction as a court of equity, will possess the power to conform the proceedings, should the necessity arise therefor, so as to administer full and complete justice and relief therein on all the facts, and however the relations of the parties before it may be changed or exist, we may quote further from the opinion last cited:

"Although the statute of a state or territory may not restrict or limit the equitable jurisdiction of the federal courts, and may not directly enlarge such jurisdiction, it may establish new rights or privileges which the federal courts may enforce on their equity or admiralty side, precisely as they may enforce a new right of action given by statute upon their common-law side."

Without attempting to now decide the method of proceeding or the relief herein obtainable, the exceptions to those portions of the answers which attack the jurisdiction of this court and its right to entertain this suit are sustained, to which the defendants severally except.