The public administrator of the county of New York brings this action against the defendant, The New York, New Haven and Hartford Railroad Company, a Connecticut corporation, to recover damages for its alleged negligence in causing the death of one George Dean, who was killed in a head-on collision while acting as an engine driver on one of the trains.
The jury rendered a verdict in favor of the plaintiff for five thousand dollars, and the Appellate Division has affirmed the judgment entered thereon with a divided court.
At the close of the plaintiff's case a motion was made to dismiss the complaint on this ground, among others: "That the Public Administrator has not the power to commence an action of this kind in this State." *Page 438 
At the close of all the evidence this motion was renewed on the previous and additional grounds: "(6) That the Public Administrator has no power to bring such a suit as this under the circumstances; (7) that his appointment as administrator with the other persons existing, who were competent to be appointed in that capacity, was null and void; (8) that the letters were null and void because the surrogate was without any jurisdiction upon the undisputed facts; (9) that no written notice was given, such as is required under the Connecticut statutes."
Section 1780 of the Code of Civil Procedure provides when a foreign corporation may be sued. It reads: "An action against a foreign corporation may be maintained by a resident of the State, or by a domestic corporation, for any cause of action. An action against a foreign corporation may be maintained by another foreign corporation, or by a non-resident, in one of the following cases only: 1. Where the action is brought to recover damages for the breach of a contract, made within the State, or relating to property situated in the State, at the time of the making thereof. 2. Where it is brought to recover real property situated within the State or a chattel, which is replevined within the State. 3. Where the cause of action arose within the State, except where the object of the action is to affect the title to real property situated without the State."
As the defendant is a foreign corporation, the parties all residents of, and the accident occurred in, the state of Connecticut, there was no jurisdiction in the Surrogate's Court of New York to issue letters of administration on the estate of the intestate, unless he died leaving assets in this state or that should come into it after his death.
The appellant insists that the plaintiff has no standing in the Supreme Court because collusion or legal fraud was practiced in the Surrogate's Court in obtaining letters of administration and thus inducing that court to take jurisdiction of the estate of the decedent.
The point is also taken that the public administrator, as *Page 439 
such, is without power to maintain this action, and that his authority in the premises is in no way enlarged merely because letters of administration were issued to him.
The counsel for the plaintiff insists that the defendant cannot attack collaterally the decree of the surrogate adjudging that letters of administration issue.
Section 2473 of the Code of Civil Procedure, contained in chapter 18 on Surrogates' Courts and proceedings therein, provides as to presumption of jurisdiction as follows: "Where the jurisdiction of a Surrogate's Court to make, in a case specified in the last section, a decree or other determination, is drawn in question, collaterally, and the necessary parties were duly cited or appeared, the jurisdiction is presumptively, and, in theabsence of fraud or collusion, conclusively, established, by an allegation of the jurisdictional facts, contained in a written petition or answer, duly verified, used in the Surrogate's Court. The fact that the parties were duly cited is presumptively proved by a recital to that effect in the decree."
It is quite obvious that the only attack the defendant could make upon the Surrogate's decree is a collateral one, based on the allegation of fraud or collusion, as it was not a party to the proceeding in the Surrogate's Court and has no standing therein to make a direct attack.
In the case of Ferguson v. Crawford (70 N.Y. 253) the question as to when a judgment may be attacked was thoroughly examined by this court and the authorities reviewed; it was held that under the system of practice established by the laws of this state, the want of jurisdiction may always be set up against a judgment when sought to be enforced, or when any benefit is claimed under it, and the bare recital of jurisdictional facts in the record of the judgment by any court is not conclusive, but only prima facie evidence, and may be disproved by extrinsic evidence. (Hood v. Hood, 85 N.Y. 561, 578; Freeman on Judgments [4th ed.], vol. 1, § 117.)
In O'Connor v. Huggins (113 N.Y. 511) the question was discussed as to the binding nature of a surrogate's decree upon *Page 440 
the parties to the proceeding. This court said (p. 516): "His adjudication, in the exercise of his general and exclusive jurisdiction, where jurisdictional facts, necessary to the possession of that jurisdiction, appear to have been alleged, and when the necessary parties have been duly cited to appear before him, is not thereafter open to collateral attack. Power to affect the adjudication resides in the court which made it, and in the court to which it may be appealed; but otherwise it is not open to question. This principle, of course, in its application to other parties affected, implies the absence of fraud orcollusion."
Throughout the proceedings the defendant has persistently insisted that there was, on the undisputed evidence, collusion and legal fraud in procuring the surrogate's decree of the county of New York, which resulted in the issuing of letters of administration on the estate of the intestate to the public administrator.
Anna Dean, widow of the intestate, was sworn for the defendant and testified as follows: "My husband left property within this State; in New York State. It was a watch and chain. I cannot say how it happened to come here. I do not know who brought it here. I believe he had it on his person at the time he was killed. He did not leave it in this State, I think. I cannot say for sure how it got here. My brother might have got it here or had it sent here. * * * That is the only property that he had in this State."
James F. Noonan testified on behalf of the defendant as follows: "I did bring property of Mr. Dean into this State after he had died. A watch and chain. I brought them into the State about three or four months after he died. Mr. Wickes told me to bring it into the State. He did not tell me for what purpose. I did tell my sister that I had brought it into the State. I did not tell her for what purpose. * * * I think he did tell me that he wanted me to bring that watch into the State so as to give foundation for making an application for letters of administration here so suit could be brought here instead of Connecticut. I think *Page 441 
that is right. And I think I brought it for that purpose and for no other. I did not take it out of the State immediately after letters had been granted. It is still in the possession of Mr. Wickes. I do not know that it is in Mr. Wickes' possession. I have been informed that it is in the safe of the Public Administrator."
It further appears in the record that all the personal property of the intestate, wherever situated, did not exceed the sum of fifty dollars, and that the watch and chain brought into this state were of the value of twenty-five dollars.
Mr. Wickes, here referred to, has acted throughout as counsel for the plaintiff.
We have thus presented, on undisputed facts, a most important question of law.
Is it possible, by a device so simple and transparent as the one here disclosed, to confer upon the Supreme Court of this state jurisdiction to try a negligence action having its origin in the state of Connecticut and between a corporation and residents of that state?
If this can be done it will open wide the floodgates of litigation in similar cases, establish a new legal industry and impose thereby upon our already overworked courts the obligation to try actions imported from a foreign jurisdiction.
It was well said in Robinson v. Oceanic Steam NavigationCo. (112 N.Y. 315, 323) as follows: "The discrimination between resident and non-resident plaintiffs is probably based upon reasons of public policy, that our courts should not be vexed with litigations between non-resident parties over causes of action which arose outside of our territorial limits. Every rule of comity, and of natural justice, and of convenience is satisfied by giving redress in our courts to non-resident litigants when the cause of action arose or the subject-matter of the litigation is situated within this State."
In view of the clear declaration of the witnesses, already quoted, that this trifling article of personal property, not exceeding in value twenty-five dollars, brought into this state by the advice of plaintiff's counsel, in order to furnish a *Page 442 
foundation on which to apply for letters of administration, so that this action could be brought here rather than in the state of Connecticut, we have presented a case of collusion and legal fraud in the proceedings before the surrogate.
We do not regard the counsel for the plaintiff as guilty of actual fraud, for what he did he did openly and with a claim of legal right, but, by an error of judgment, he was led to adopt a course of procedure that amounted to collusion and legal fraud.
It cannot be said, as matter of law, that this effort to create assets in this state brought this case within either the Laws of 1898 (Chap. 230, § 4, subd. 2), being the act in relation to the public administrator in the county of New York, or section 2476 of the Code of Civil Procedure, defining the exclusive jurisdiction of Surrogates' Courts.
The act of 1898 refers to assets which "shall arrive within the county of New York after his death," and the section of the Code referred to speaks of property "which has since his death come into the State and remains unadministered."
These provisions should be construed as meaning that the assets must "arrive" or "come" into the state, in good faith, in due course of business, and not for the avowed object of securing a resident plaintiff who can prosecute a negligence action against a foreign corporation on a cause of action arising in, and between residents of, another state.
The plaintiff's counsel points out that in Matter of Hughes
(95 N.Y. 55) this court sustained the jurisdiction of the surrogate based upon assets irregularly brought here. This court in its opinion states that the removal of the assets from the state of Pennsylvania was illegal, but as it had been found that this act was without wrongful intent, that there were no unpaid creditors in Pennsylvania, and that the only persons interested in the distribution of the estate were in New York, the assets would not be returned to the foreign jurisdiction.
In Woerner on the American Law of Administration (second edition), at page (star) 442, the rule is laid down as follows: "Property brought into the State for collusive purposes, *Page 443 
or temporarily, after the owner's death, does not confer jurisdiction to grant administration thereon." (Citing Christy
v. Vest, 36 Iowa 285; Varner v. Bevil, 17 Ala. 286.)
Our attention has been called to no case in this court involving precisely the question now presented.
It may be safely assumed that this is a pioneer case, in an effort to enlarge the jurisdiction of the courts of this state, and, in view of its fate, will be valuable, not only as a precedent, but a warning.
The learned Appellate Division said in its opinion: "We think, therefore, that at this stage of the litigation, after judgment entered, the discretion exercised by the court in entertaining the action should not be disturbed."
The trial court was confronted by no question of discretion, but by a question of law, resting on undisputed evidence, going to the jurisdiction; the disposition made of that question presents legal error reviewable by this court.
We recognize the hardship imposed upon the widow and next of kin by the reversal of the judgment at this stage of the proceedings, but the grave questions involved of public policy and orderly procedure leave the court no choice.
The counsel for the appellant challenges the power of the public administrator to act under the letters of administration issued to him, and insists that it was no part of his official duty to act as plaintiff herein.
The decision of this point and others presented on the argument is unnecessary, as the views we have already expressed dispose of this appeal.
The judgment and order appealed from should be reversed and the complaint dismissed, with costs to the defendant in all the courts.
PARKER, Ch. J., GRAY, O'BRIEN, HAIGHT, CULLEN and WERNER, JJ., concur.
Judgment and order reversed. *Page 444