EDITH G. O'NEIL, as Executrix, etc., of NELLIE GRAY, Deceased, Plaintiff, *v.* VITO MECCIA and CHRISTOPHER MECCIA, Defendants.

Supreme Court, Special Term, Schoharie County, January 9, 1939.

*Sharon J. Mauhs,* for the plaintiff.

*O. L. Van Horne,* for the defendants.

BERGAN, J.   Defendant Vito Meccia in November, 1936, obtained by default a judgment of foreclosure and sale against plaintiff as executrix of Nellie Gray, upon a bond and mortgage executed by the testatrix.   This suit in equity is instituted by plaintiff to set aside and restrain the enforcement of that judgment upon the ground the plaintiff's default and the consequent judgment were induced by fraud.   Defendants move to dismiss the complaint upon the ground it fails to state facts sufficient to constitute a cause of action.   Granting to the complaint every favorable inference

from the facts pleaded, to which the pleading is entitled on this motion, it must be assumed that the mortgage debt which was the subject-matter of the foreclosure suit had in fact been paid by the testatrix; that this was unknown to the executrix; that it was known to the plaintiff in that suit; that he falsely represented to the executrix that the mortgage debt remained unpaid and that such fraud induced the default in the action.

A collateral attack upon a judgment of a court having jurisdiction of parties and subject-matter is an extraordinary equitable remedy. It has rarely been granted in this State, and a suit seeking such a remedy is closely circumscribed by well-defined limitations. The jurisdiction to grant this relief, Judge ANDREWS wrote in *Smith* v. *Nelson* (62 N. Y. 286, 288), demands " a close adherence to principles and precedents in exercising it." The fraud perpetrated must be extrinsic or collateral to the matter tried by the court and not a matter on which the decree was rendered. (*United States* v. *Throckmorton*, 98 U. S. 68.) Perjury upon the trial is treated as intrinsic fraud and a collateral attack upon a judgment cannot be maintained upon that ground. (*Jacolowitz* v. *Herson*, 268 N. Y. 130.) There it was said, quoting 5 Pomeroy's Equity Jurisprudence, page 4683, that the fraud must relate to the obtaining of the judgment and must be such as to prevent the losing party from having an adversary trial of the issues. It must be fraud " practiced in the procurement or concoction of the judgment itself, by which the defendant was prevented from availing himself of his defense." (*Mayor* v. *Brady*, 115 N. Y. 599, 615. See, also, *Arcuri* v. *Arcuri*, 265 id. 358.) The fraud not only must have occurred in the " very concoction or procuring of the judgment " but must be of a matter not known to the opposite party " and for not knowing which, he is not chargeable with neglect or inattention." (FOLGER, J., in *Stilwell* v. *Carpenter*, 2 Abb. N. C. 238, 263.) To the same effect see *Ross* v. *Wood* (70 N. Y. 8, 10).

If perjury upon a trial is not a sufficient ground for the relief sought, it would seem that an unsworn misrepresentation by a plaintiff to a defendant of the merits of a defense would constitute no better ground. So it was indicated in *Crouse* v. *McVickar* (207 N. Y. 213), which is closely analogous to the facts pleaded here. In that case plaintiff was induced by fraudulent representations of the validity of a claim, which defendant intended to support by perjury of witnesses subpœnaed for that purpose, to enter into a stipulation which resulted in a judgment. There Chief Judge CULLEN, writing for the court, said (p. 219): " No fraud is charged except in statements made as to the issue itself. If perjury in that respect made on the witness stand and inducing

a court or jury to render an erroneous decision would not support an action to set aside the judgment, it is difficult to see why it should be of more moment because it frightened the parties into a compromise."

I think this case is not distinguishable from that one, and Judge Cardozo, in restating the rule upon that and other authorities in *Fuhrmann* v. *Fanroth* (254 N. Y. 479, 482), pointed out that the relief is granted only upon the basis of some " covinous device " of fraud affecting the very means by which the judgment was obtained, but added that " the rule is less rigid when the application for relief is by motion in the action."

The complaint contains a further allegation that since the default and entry of the judgment, plaintiff has discovered among the effects of the testatrix the bond and mortgage upon which the judgment was obtained and argues that this newly-discovered evidence is a ground for granting the relief sought. By this allegation and the prayer for relief plaintiff, in effect, pleads a bill of review in equity. The form of relief was well established in England and was carried into the practice of the Court of Chancery of New York. A bill of review was quite distinguishable from a collateral attack in equity upon a judgment for fraud. It was in the nature of a writ of error for the examination and alteration of a decree made upon a former bill. It was allowable only after the enrollment of the decree. The practice was settled by the first of the ordinances in chancery of Lord Chancellor Bacon, " which ordinances have never since been departed from." (2 Barb. Ch. Prac. [2d Rev. ed.] 91.) The ordinances provided that " no bill of review shall be admitted, except it contains either error in law appearing in the body of the decree, without further examination of matters of fact, or some new matter which hath arisen in time after the decree, and not any new proof which might have been used when the decree was made. Nevertheless, upon new proof that is come to light after the decree was made, which could not possibly have been used at the time when the decree passed, a bill of review may be grounded by the special license of the court and not otherwise." (See, also, 21 C. J. 744; 1 Whitehouse Eq. Prac. p. 279.)

In so far as the bill of review sought relief against an enrolled decree upon the basis of newly-discovered facts, it could only be maintained with the permission of the court, based upon a petition and supporting affidavits. (Whitehouse, *supra*, p. 285.) It was never allowed as a matter of right, but always in the discretion of the court (Barb. *supra*, p. 93; 21 C. J. 763), and it usually required a showing by the petitioner that he had performed the decree or that performance was impossible. The requirement of consent

to file a bill of review upon the discovery of new matter was carried as an incident to this remedy into the chancery practice of New York (*Webb* v. *Pell*, 1 Paige, 564) as well as the requirement that the petition must be supported by affidavit. (*Wiser* v. *Blachly*, 2 Johns. Ch. 488, 490.)

If the remedy of a bill of review in equity addressed to a final decree for newly-discovered evidence still exists, plaintiff has not brought herself within the procedural conditions precedent that have always applied to such a suit. Indeed, Chief Judge CULLEN, in *Crouse* v. *McVickar* (*supra*, p. 220), questioned the modern existence of the remedy. I have not seen a case in which it has been applied in New York since the transfer of the equity jurisdiction of the late Court of Chancery to this court, although text writers frequently refer to later decisions in States having separate equity establishments, and in some States it seems to have survived the creation of the collateral code proceedings.

I think it must be said that the remedy no longer exists in New York. The bill, under the English practice, was the result of consistency with the view taken by the chancellors of the immutability of a final decree that had passed the great seal and had been enrolled. The ordinances of Lord BACON which defined the bill of review provided that " no decree shall be reversed, altered, or explained, being once under the great seal, but upon bill of review." The impression of the great seal and the enrollment of the decree were matters of grave solemnity. The decree in this final form was not easily to be disturbed upon a mere motion for errors, or to relieve the embarrassment of one who had subsequently discovered evidence which might change the result. A separate suit resulting in a new decree of equal formality seemed to be the only logical device for the alteration or change in a decree consistent with that concept of finality.

The present New York practice, in equity as in law, is far more elastic. With the distinctions in forms of civil action abolished (Civ. Prac. Act, § 8), and a full opportunity in all actions, equitable as well as legal, to move for a new trial (Civ. Prac. Act, § 552) upon broad grounds, including the ground of newly-discovered evidence, and with the power of the court freely exercised to relieve defaults, both reason and necessity for the bill of review as a separate suit in equity have disappeared, and it is fully within the power of the court, as a matter of policy, to decline to entertain a separate complaint for relief in this form, and to remit a party otherwise showing good ground to the ample protection of the statutory practice.

The complaint is dismissed, without costs.

Submit order.