## GRIFFITH v. BANK OF NEW YORK.

### No. 115.

Circuit Court of Appeals, Second Circuit.

Feb. 16, 1945.

Zarah Williamson, of New York City (Josephine E. Kestler, of New York City, on the brief), for plaintiff-appellant.

George W. Martin, of New York City (Emmet, Marvin & Martin, of New York City, on the brief), for defendant-appellee.

Before SWAN, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

Relying on the diverse citizenship of the parties, plaintiff, a citizen of California, has sued defendant, located in New York City, for damages of $40,000 alleged to have been caused her by acts of defendant as testamentary trustee under the will of Anna R. Morison, of whom plaintiff was one of the two residuary legatees after the expiration of a life estate. The complaint and its accompanying exhibits are most full and complete, obviously designed, among other things, to anticipate defenses of res judicata. These defenses arise by virtue of two judgments—one a consent judgment of the Supreme Court of New York County settling defendant's account as trustee upon the termination of the life estate, and the other the order of the Surrogate's Court for New York County dismissing a petition for resettlement of this account because of claimed duress in the procurement of the stipulation for the first judgment. What effect these judgments shall be accorded in a federal action attempting once more to reopen the issues is the very interesting question presented on this appeal from the judgment of the District Court, 59 F.Supp. 271, dismissing the complaint upon motion for failure to state a claim upon which relief could be granted.

From the allegations of the complaint it appears that after the termination of the life estate the beneficiaries under the will entered into a stipulation with defendant for the entry of a judgment in the New York Supreme Court providing for the payment of certain securities and monies to the former and settling the account of the latter and releasing it from further liability. Though the settlement thus envisaged has been fully consummated, plaintiff now alleges that her consent was obtained by duress, and that she has been damaged by the duress practiced upon her. Acts constituting the duress are alleged to be defendant's willful withholding of principal and income of the estate, initiation of unnecessary and expensive litigation ex-

hausting this plaintiff and her co-beneficiary financially (referring to the action for construction of the will which resulted in a decree sustaining the validity of the trust, Bank of New York v. Kaufman, Sup., 26 N.Y.S.2d 474, affirmed 261 App. Div. 818, 25 N.Y.S.2d 408, leave to appeal denied 261 App.Div. 898, 26 N.Y.S.2d 316; 285 N.Y. 854, 33 N.E.2d 566), and threatened additional unfair and oppressive expense of litigation and withholding of the estate, coupled with refusal of information as to the trustee's conduct of the trust, bringing plaintiff to "a point of discouragement and despair" and fear of loss of her estate, so that she was not in a position to contract freely or negotiate a fair settlement with defendant.

Further allegations show that after defendant had delivered the trust property to plaintiff, as ordered by the judgment, plaintiff and her co-beneficiary filed a petition in the Surrogate's Court to compel the bank to account in that court as trustee under the Morison will. This petition, attached to the complaint herein as an exhibit, was most detailed in its recitals of alleged defaults by the trustee in making investments and otherwise administering the trust, and of the claimed duress of the trustee in procuring the settlement of its account in the Supreme Court. Nevertheless, the Surrogate dismissed the petition in a short opinion, Estate of Anna R. Morison, —— Misc. ——, 53 N.Y.S.2d 696, wherein he said that the former judgment "is conclusive and may not be collaterally attacked," citing Crouse v. McVickar, 207 N.Y. 213, 100 N.E. 697, 45 L.R.A.,N.S., 1159. And the District Court, in dismissing the present complaint, cited both the Crouse case and the Surrogate's opinion.

■ We agree with the District Court's view that this action was a collateral attack on the New York Supreme Court judgment. Notwithstanding that it took the form of a tort claim for damages, either for defendant's breaches of trust or for defendant's duress in procuring the stipulation for the judgment, its essential and necessary nature is an equitable proceeding collaterally attacking the judgment and seeking appropriate relief if that attack is sustained. For, as the cases discussed hereinafter show, legal relief is held barred by the formal judgment and the available relief is necessarily equitable in nature. But we cannot agree with the District Court's further conclusion that a judgment cannot be attacked collaterally, and that parties seeking relief from it must do so in the original action. For it is well settled that the federal courts may exercise their equity powers so as to set aside, enjoin enforcement of, or ignore a state court judgment obtained by fraud. Marshall v. Holmes, 141 U.S. 589, 12 S.Ct. 62, 35 L.Ed. 870.[1] And though it was once thought necessary that such fraud be "extrinsic," so that it could not have been considered in the original action, United States v. Throckmorton, 98 U.S. 61, 25 L.Ed. 93, the later cases no longer seem to adhere strictly to even this limitation. Marshall v. Holmes, supra; Publicker v. Shallcross, 3 Cir., 106 F.2d 949, 126 A.L.R. 386, certiorari denied 308 U.S. 624, 60 S. Ct. 379, 84 L.Ed. 521; cf. Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U. S. 238, 245, 246, 64 S.Ct. 997.

■ But putting aside the unsettled question whether cases such as those of Holmes and Publicker definitely mark the elimination of the Throckmorton restriction, cf. Graver v. Faurot, 162 U.S. 435, 16 S.Ct. 799, 40 L.Ed. 1030, the District Court erred because the duress or fraud here involved was, as alleged, sufficient to have warranted a chancellor in disregarding or setting aside the prior judgment. Since the consent to that judgment is alleged to have been procured by the trustee's threat to tie up the property indefinitely unless settlement was made, this case is substantially identical with Ingram v. Lewis, 10 Cir., 37 F.2d 259, 70 A.L.R. 702, certiorari denied 282 U.S. 842, 51 S. Ct. 22, 75 L.Ed. 747, where a judgment of dismissal of an action for an accounting was disregarded by the federal court, since such dismissal was based on a release obtained by the trustee on threat of withholding the property. See also Park v. Park, 5 Cir., 123 F.2d 370; Seay v. Hawkins, 8 Cir., 17 F.2d 710; Jefferson v. Gypsy Oil Co., 8 Cir., 27 F.2d 304; Horton

---

[1] See also Simon v. Southern Ry. Co., 236 U.S. 115, 35 S.Ct. 255, 59 L.Ed. 492; Wells Fargo & Co. v. Taylor, 254 U.S. 175, 183, 185, 186, 41 S.Ct. 93, 65 L.Ed. 205; McDaniel v. Traylor, 196 U.S. 415, 25 S.Ct. 369, 49 L.Ed. 533; Beneficial Loan Co. v. Noble, 10 Cir., 129 F.2d 425; Chicago, R. I. & P. Ry. Co. v. Callicotte, 8 Cir., 267 F. 799, 810, 16 A.L.R. 386, certiorari denied Callicotte v. Chicago, R. I. & P. Ry. Co., 255 U.S. 570, 41 S.Ct. 375, 65 L.Ed. 791, 16 A.L.R. 397.

v. Stegmyer, 8 Cir., 175 F. 756, 758, 20 Ann.Cas. 1134.

Though the court in the Ingram case, supra, did not in so many words classify the case as one of "extrinsic" fraud, both the situation there presented and the one before us seem clearly to be so characterized if we are bound to hold the powers of a court of equity thus restricted. For the very duress by which the release or consent is obtained also prevents the coerced party from challenging before or at trial the statements or conduct of its adversary. Thus in the original action the issue of duress never is before the court. Indeed, the case differs little, if at all, from those where a witness is forcibly prevented from testifying, or an attorney is bribed to fight a losing battle or give his client false advice. Unless, therefore, the later judgment of the Surrogate's Court changes the situation, the District Court was in error in dismissing plaintiff's complaint.

■ The Surrogate's decision does pose an important and, so far as we can discover, an unusual problem of federal judicial power and discretion. This is because of the ground which the Surrogate took for his dismissal of plaintiff's petition to compel the trustee to account. Plaintiff argues that this is but the decision of a court of limited jurisdiction, that it has no power to act in the premises, and hence that it cannot be a bar to an action by plaintiff in a court having broader powers. But we cannot agree, for that was neither the expressed nor, as we view it, a permissible legal ground for the decision. Whatever doubt may have existed earlier, the jurisdiction of the Surrogate's Court was broadened by a series of statutory changes completed in 1921 which amended § 40 of the Surrogate's Court Act and which now give to that court well recognized and extensive equitable powers. Raymond v. Davis' Estate, 248 N. Y. 67, 161 N.E. 421. Hence it has been held to have jurisdiction to vacate and set aside releases obtained by fraud, In re Winslow's Estate, 151 Misc. 298, 272 N.Y.S. 829; In re Frame's Estate, 128 Misc. 788, 219 N.Y.S. 759, affirmed without opinion 234 App.Div. 748, 254 N.Y.S. 917. There seems no reason for a different result when the consent or release has led to the further step of a judgment. In fact, it is well settled in New York that equity is not confronted with any insurmountable obstacle to a grant of relief otherwise available to victims of fraud because somewhere in the scheme leading to the fraud there is found a judgment as a well considered step in its attempted accomplishment. Byrnes v. Owen, 243 N.Y. 211, 153 N.E. 51. And so the courts have refused to distinguish between fraud resulting in a private settlement and fraud culminating in a judgment, but have awarded damages for loss or injury resulting from a fraudulently obtained judgment, or have not allowed the judgment to be a bar or required its formal overturn in a separate action commenced for that purpose. Verplanck v. Van Buren, 76 N.Y. 247, 259, 260, 261; Gould v. Cayuga County Nat. Bank, 99 N.Y. 333, 2 N.E. 16; Dodds v. McColgan, 134 Misc. 518, 235 N.Y.S. 492, 500, affirmed 229 App.Div. 273, 241 N.Y.S. 584; Gray v. Fogarty, 237 App.Div. 855, 261 N.Y.S. 842; Boston & M. R. R. v. Delaware & H. Co., 238 App.Div. 191, 195, 264 N.Y.S. 470, 476; see Ross v. Preston, 292 N.Y. 433, 437, 55 N.E.2d 490.

The Surrogate appears, therefore, not to have lacked ample equitable powers in the premises; and his opinion shows that he was acting not on the basis of lack of jurisdiction, but of a prohibition stated by Crouse v. McVickar, supra, as New York practice against the collateral attack of judgments obtained by the type of fraud here involved. In the Crouse case, supra, the New York Court of Appeals held not open to collateral attack a judgment which, although obtained by a stipulation of settlement or compromise when the action was brought on for trial, was nevertheless based upon the expected testimony of certain witnesses who had been suborned to perjure themselves. The court obviously intended to state no new rule, but, citing text writers and other authorities, including United States v. Throckmorton, supra, proceeded to state the usual principle that "the fraud for which a judgment can be impeached must be in some matter other than the issue in controversy in the action" [207 N.Y. 213, 100 N.E. 698], that redress for perjury must be sought in the original action and that there "the stipulation acted as a substitute for evidence," and that the intended perjury of the witnesses should be given only the effect of perjury at trial and hence would not support an original action to set aside the judgment. 207 N.Y. at pages 218, 219, 100 N.E. 697, 45 L.R.A.,N.S., 1159.

■ The Crouse case, therefore, actually reiterates and re-enforces the general rule, well settled in New York, that judgments obtained by extrinsic fraud can be attacked collaterally. Lapiedra v. American Surety Co., 247 N.Y. 25, 31, 159 N.E. 710; Hoes v. New York, N. H. & H. R. Co., 173 N.Y. 435, 66 N.E. 119; Ferguson v. Crawford, 70 N.Y. 253, 267, 26 Am.Rep. 589; Mandeville v. Reynolds, 68 N.Y. 528, 543. The Crouse case itself has been interpreted to stand for no more than that perjury on the part of the successful party or his witnesses does not subject a judgment to collateral attack, Jacobowitz v. Metselaar, 268 N.Y. 130, 197 N.E. 169, 99 A.L.R. 1198, or for no more than the traditional distinction between extrinsic and intrinsic fraud. Arcuri v. Arcuri, 265 N. Y. 358, 360, 361, 193 N.E. 174, 175; Fuhrmann v. Fanroth, 254 N.Y. 479, 482, 173 N.E. 685, 686; Dodge v. Campbell, 128 Misc. 778, 220 N.Y.S. 262. It seems fairly clear, therefore, that New York does allow collateral attack on a judgment for extrinsic fraud or duress, as we concluded after an extensive analysis of the cases dealing with foreign divorce decrees. Cohen v. Randall, 2 Cir., 137 F.2d 441, 443, 445, certiorari denied 320 U.S. 796, 64 S.Ct. 263.[2]

■ In the light of this background of New York practice, we find it difficult to appraise the scope of the Surrogate's decision. His actual order, entered after notice to the parties, is only that the petition "is hereby dismissed"; it does refer to the Court's having filed its decision in writing. The opinion does show clearly that decision is not on the merits, but is only because relief was sought in the wrong court. It does not speak of "intrinsic fraud" in terms, though it is possible that the Surrogate had the New York cases above cited in mind when he reached his conclusion. Nevertheless, when he says that attack upon a judgment for "fraud or

newly discovered evidence or other grounds for [its] vacatur" must be "by a direct application to the Supreme Court," he seems to be going beyond the ancient distinction between forms of fraud. Elsewhere he seems to regard the rule he is following as one of comity on the part of a Surrogate where jurisdiction, otherwise concurrent, has been taken by the Supreme Court. A judgment other than on the merits is conclusive only as to the point expressly decided; it is not res judicata on points which might have been included, but were not adjudicated. Restatement, Judgments, 1942, § 49; 2 Freeman, Judgments, 5th Ed. 1925, § 745; Thorburn v. Gates, 103 Misc. 292, 171 N.Y.S. 198, affirmed 184 App.Div. 443, 171 N.Y.S. 568; Fogarty v. O'Reilly, 56 Misc. 192, 107 N.Y.S. 234, affirmed 123 App.Div. 923, 107 N.Y.S. 1127; Genet v. President, etc., of Delaware & Hudson Canal Co., 163 N.Y. 173, 57 N.E. 297; Shaw v. Broadbent, 129 N. Y. 114, 123, 29 N.E. 238; Converse v. Sickles, 146 N.Y. 200, 208, 40 N.E. 777, 48 Am.St.Rep. 790; Richard v. American Union Bank, 253 N.Y. 166, 170 N.E. 532, 69 A.L.R. 667.[3] Here all we can be sure of is that the Surrogate dismissed the petition for reasons not going to the merits. We cannot say more with any degree of certainty, and hence we do not feel justified in holding his order a bar to this action. In so holding we are making no attempt to distinguish between the effect of what may be intended to be reasons only for the result and a definite adjudication of details of fact and law, for it seems clear that the Surrogate's order cannot properly be taken as the latter.

■ There being no estoppel by judgment which would bar action in a court of competent jurisdiction, is there something in the federal system to prevent action in a federal court? It is true that in Cohen v. Randall, supra, where we recognized such a federal right, we did not have an

---

[2] Recent lower court cases in accord include In re Schmidt's Estate, Sup., 33 N. Y.S.2d 341; Finan v. Finan, Sup., 47 N. Y.S.2d 429; Scopano v. United States Gypsum Co., 166 Misc. 805, 3 N.Y.S.2d 300; and compare also other cases cited and discussed in Cohen v. Randall, supra. In re Gray's Will, 169 Misc. 985, 8 N.Y. S.2d 850, which does attempt to formulate a limited rule of attack upon judgments in New York, does not go so far as to deny collateral attack upon a judgment obtained by extrinsic fraud and duress.

[3] Of course, a state judgment on the merits of fraud is res judicata in the federal courts as elsewhere. American Bakeries Co. v. Vining, 5 Cir., 80 F.2d 932; Bailey v. Willeford, C.C.W.D.N.C., 126 F. 803, affirmed 4 Cir., 136 F. 382, certiorari denied 199 U.S. 606, 26 S.Ct. 746, 50 L.Ed. 330. See also American Automobile Ins. Co. v. Benedetto, 3 Cir., 58 F.2d 918, certiorari denied 287 U.S. 621, 53 S.Ct. 20, 77 L.Ed. 539.

intermediate state court decision pointing to a different procedure. But since the matters here involved are procedural, the doctrine of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, is not involved. And it is well settled that state statutes cannot limit the jurisdiction or restrict the procedure of the federal courts, although they may at times provide plaintiffs with additional remedies which will be enforced in the federal courts. 1 Moore's Federal Practice § 2.07; Park v. Park, supra.[4] Moreover, while occasional cases have held a plaintiff bound to follow the state procedure providing ·for the setting aside of judgments for irregularity, mistake, and similar grounds, probably because the state practice provides an adequate remedy at law, no such restriction has governed the fraud cases. Barrow v. Hunton, 99 U.S. 80, 83, 25 L.Ed. 407; Eggers v. Krueger, 9 Cir., 236 F. 852; Phillips Petroleum Co. et al. v. Jenkins, 8 Cir., 91 F.2d 183; Smith v. Apple, 8 Cir., 6 F.2d 559; Simon v. Southern Ry. Co., 236 U.S. 115, 35 S.Ct. 255, 59 L.Ed. 492; Davenport v. Moore, C.C.S.D.Iowa, 74 F. 945; see also Marshall v. Holmes, supra.[5] And, indeed, plaintiff's remedy to set aside the New York Supreme Court judgment in that very court cannot be considered an adequate remedy, since motions to set aside a judgment for fraud are not contemplated by the relevant sections of the New York Civil Practice Act. Cf. Gysin v. Gysin, 263 N.Y. 509, 189 N.E. 568; Furman v. Furman, 153 N.Y. 309, 47 N.E. 577, 60 Am.St.Rep. 629; Foster v. Yorkshire Ins. Co., 167 Misc. 204, 3 N.Y.S.2d 149, affirmed 255 App.Div. 829, 7 N.Y.S.2d 79. As we have pointed out, such a remedy is equitable,[6] and can be sought in either state or federal courts. Consequently there appears to be no proper ground for holding a federal court compelled to deny relief to a litigant situated as is the plaintiff.

Assuming power to act, nevertheless should the district court refuse to take jurisdiction in the exercise of discretion? Although we have found no direct authority, it would seem that there should be some discretion in a federal court to refuse equitable relief where state procedure is intended to be exclusive—at least in the absence of a showing that that procedure is inadequate to protect a plaintiff. 'Cf. Massachusetts Ben. Life Ass'n v. Lohmiller, 7 Cir., 74 F. 23. And the admonition of so distinguished a state jurist as the surrogate who acted in this case is necessarily entitled to great weight with us. The difficulty is, however, that, as we have indicated, we are doubtful of the intended scope of his decision, beyond its exact legal point, and hence whether we should properly take it as such admonition addressed to federal action, particularly since, in our judgment, the other state and federal cases point so strongly the other way. And we have recently been reminded of the general duty of federal courts in diversity cases to decide questions even involving state law unless some exceptional circumstances of a stereotyped nature, not here present, intervene. Meredith v. City of Winter Haven, 320 U.S. 228, 64 S.Ct. 7. We think, therefore, that no sufficient ground for dismissal of this action has been shown. Of course, we do not pass upon the existence of actual duress or coercion; that cannot be decided upon the mere face of the complaint.

Reversed and remanded.

---

[4] The fact that Marshall v. Holmes, 141 U.S. 589, 12 S.Ct. 62, 35 L.Ed. 870, went further than United States v. Throckmorton, 98 U.S. 61, 25 L.Ed. 93, may be explained on the ground of the additional remedy provided by Louisiana statute and thus available in the federal court. Cf. United States v. Gleeson, 2 Cir., 90 F. 778. See also Simon v. Southern Ry. Co., 236 U.S. 115, 35 S.Ct. 255, 59 L.Ed. 492.

[5] Osterling v. Commonwealth Trust Co. of Pittsburgh, D.C.W.D.Pa., 35 F.Supp. 704, affirmed 3 Cir., 115 F.2d 809, followed state procedure in holding the matter there involved exclusively within the jurisdiction of the state probate court. Cf. Park v. Park, 5 Cir., 123 F.2d 370.

[6] There is language in Chase Nat. Bank v. City of Norwalk, 291 U.S. 431, 440, 441, 54 S.Ct. 475, 479, 78 L.Ed. 894, to the effect that a showing of diligence in seeking relief in the proceeding itself "is ordinarily required" for the grant of equitable relief against a judgment of a court of competent jurisdiction; but the context, as well as the cases cited, including Marshall v. Holmes, supra note 4, and Wells Fargo & Co. v. Taylor, supra note 1, shows that this relates only to matter fairly cognizable in that proceeding, not to extrinsic fraud or duress exercised upon a party.