OSCAR L. RICHARD et al., as Surviving Partners of the Firm of C. B. RICHARD & COMPANY, Respondents, *v.* AMERICAN UNION BANK, Appellant.

(Argued January 16, 1930; decided February 11, 1930.)

*Edwin T. Murdoch, Edwin L. Garvin* and *Frederick T. Kelsey* for appellant. The complaint in the present action does not meet the suggestions made by the Court of Appeals in its opinion in the former action as to how the plaintiffs might have sought to obtain relief. (*Cox v. Stokes,* 156 N. Y. 491; *Kley v. Healy,* 127 N. Y. 555.) The first defense is sufficient because if the action be considered as being one to recover damages and not for reparation based on rescission the defense establishes that the complaint at bar, although differing in form, is in effect the same as the complaint which has been dismissed, thereby making the former decision one on the merits, and if the action be for rescission it must fail because the plaintiffs have already elected to sue for damages. (*Richard v. American Union Bank,* 210 App. Div. 22; *Hirshbach v. Ketchum,* 79 App. Div. 561; *Pollak v. Dodge Mfg. Co.,* 81 Misc. Rep. 216; *Sokoloff v. National City Bank,* 239 N. Y. 158; *Terry v. Munger,* 121 N. Y. 161; *Clark v. Kirby,* 243 N. Y. 295; *Matter of Garver,* 176 N. Y. 386.) The action is barred by the Statute of Limitations; therefore, the second defense which pleads the statute should be allowed to stand. (*Wakulaw v. State Bank,* 214 App. Div. 673.) The third defense is sufficient because it establishes ratification by plaintiffs, in answer to their claims of rescission, and facts in mitigation of plaintiffs' alleged damages. (*Sokoloff v. National City Bank,* 239 N. Y. 158.) The fifth defense is sufficient because it shows that the delay in performance was due entirely to the default of plaintiffs' agent. (*Myers v. Brown,* 142 App. Div. 658; *Spopetz v. American Express Co.,* 146 N. E. Rep. 262; *Richard v. Credit Suisse,* 242 N. Y. 346.)

*Walter H. Pollak, J. Charles Weschler* and *Ruth I. Wilson* for respondents. The first defense to each cause of action is insufficient in law. The prior judgment was not upon the merits nor is it alleged that the judgment declares that it was upon the merits. The deficiencies of the complaint in the prior action have been supplied in the present complaint. (*Richard* v. *American Union Bank*, 241 N. Y. 163; Civ. Prac. Act, § 482; *Genet* v. *Delaware & Hudson Canal Co.*, 170 N. Y. 278; *Peterson* v. *Ocean Electric R. R. Co.*, 214 N. Y. 43; *Stowell* v. *Chamberlain*, 60 N. Y. 272; *Pollak* v. *Dodge*, 81 Misc. Rep. 216; *Marsh* v. *Masterton*, 101 N. Y. 401; *Richard* v. *Credit Suisse*, 242 N. Y. 346; *Kantor* v. *Aristo Hosiery Co., Inc.*, 222 App. Div. 504; 248 N. Y. 630; *Poppenberg* v. *Owen & Co.*, 84 Misc. Rep. 126; 165 App. Div. 946; 221 N. Y. 569; *Hoppe* v. *Russo-Asiatic Bank*, 235 N. Y. 37; *Sokoloff* v. *National City Bank*, 250 N. Y. 69; *Schenck* v. *State Line Telephone Co.*, 238 N. Y. 308; *Clark* v. *Kirby*, 243 N. Y. 295.) The second defense to each cause of action — the six-year Statute of Limitations — is insufficient in law. The first action was started within six years, and this action within a year after the termination of that action. (*Silverstein* v. *Brown*, 153 App. Div. 677; *Slater* v. *Slater*, 208 App. Div. 567; 240 N. Y. 557; *Standard Fashion Co.* v. *Thompson*, 137 App. Div. 588; *Devine* v. *Melton*, 170 App. Div. 280; *Wooster* v. *42nd St. R. R. Co.*, 71 N. Y. 471; *Deyo* v. *Hudson*, 226 N. Y. 685.) The third defense, alleging that defendant attempted to perform more than a year after the date set for performance, is manifestly insufficient when pleaded to causes of action based upon a failure to perform a contract as to which time is of the essence. (*Gravenhorst* v. *Zimmerman*, 236 N. Y. 22; *Trainor* v. *Amsinck*, 236 N. Y. 392; *Mawhinney* v. *Millbrook*, 234 N. Y. 244; *Richard* v. *American Union Bank*, 241 N. Y. 163; *Richard* v. *Credit Suisse*, 242 N. Y. 346; *Hoppe* v. *Russo-Asiatic Bank*, 235 N. Y. 37; *Kantor* v. *Aristo Hosiery Co. Inc.*, 222 App. Div. 502; 248 N. Y. 630; Pers. Prop. Law, § 130; *Kugel-*

*man* v. *Ritter*, 90 Misc. Rep. 279.) The fourth defense, that delayed performance was accepted, is insufficiently alleged, and is insufficient in view of the clear notice given reserving the right to damages for delay. (*Houston* v. *Coombs*, 224 App. Div. 396; *Root Co.* v. *N. Y. C., etc., R. R. Co.*, 166 App. Div. 137.) The fifth defense, that defendant's obligation was not to make payment, but merely to give instructions to the foreign banks, that the foreign banks were plaintiffs' agents and that both their delay and their acceptance of the belated delivery were chargeable to plaintiffs, is insufficient. (*Richard* v. *Credit Suisse*, 242 N. Y. 346; *Gravenhorst* v. *Zimmerman*, 236 N. Y. 22; *Sokoloff* v. *National City Bank*, 250 N. Y. 69; *Benton* v. *Morningside College*, 202 Iowa, 15; *Everett* v. *Drew,* 129 Mass. 150; *Seymour* v. *Mechanics & Metals Nat. Bank*, 108 Misc. Rep. 138.)

LEHMAN, J. The complaint alleges as a first cause of action that at the city of New York on November 14, 1919, plaintiffs and the Nemeth State Bank, whose obligations defendant later assumed and undertook to pay, entered into agreements whereby the Nemeth State Bank, in consideration of the sum of $72,500 then paid to it by the plaintiffs, sold to the plaintiffs 2,000,000 lei, being the currency of the country of Roumania, to be transferred by cable to the bank of Marmoresch, Blank & Co. at Bucharest, Roumania, for the account of the plaintiffs. That the said Nemeth State Bank wholly failed and neglected to establish or effect a credit in favor of these plaintiffs with said bank Marmoresch, Blank & Co. in said 2,000,000 lei or any part thereof. As a second cause of action, the complaint alleges a similar failure to carry out another contract for the sale and transfer by cable of Roumanian lei. The plaintiffs now seek redress for the alleged breach of these contracts by the Nemeth State Bank. Since, except for differences in time, place and amounts, the allegations contained in the two causes of action are identical, we shall for con-

venience confine our consideration to the allegations of the first cause of action.

In a prior action the plaintiffs sought redress for the same breaches of contract. In that action the complaint was dismissed " on the ground that it did not set forth a cause of action." There the complaint showed on its face that long after the stipulated date the defendant had made a transfer of credit to the plaintiffs in the sum of 2,000,000 lei. Damages were sought for the delay, since in the interval the value of the lei measured in American money had declined. The court held that " in the absence of special circumstances we will not assume either that the parties contemplated a liability for damages to one intending to use the lei in the markets of Roumania because there might be a depreciation in the value of the lei when measured by our currency, or that in fact such depreciation did cause the plaintiffs any damage."

The prevailing opinion pointed out that the defect in the complaint was one of form. The plaintiffs " elected to give to their complaint a form which, as we think, deprives them of relief which they might otherwise have secured." (*Richard* v. *American Union Bank*, 241 N. Y. 163.)

In the complaint in the present action the plaintiffs have attempted to remedy the defect which this court held rendered the complaint in the previous action insufficient. The defendant again moved on the pleadings to dismiss the complaint. From the denial of that motion at Special Term the defendant never appealed. We may now examine the allegations of the complaint only to test the sufficiency of the affirmative defenses which have been stricken out. (*Baxter* v. *McDonnell*, 154 N. Y. 432.)

The first separate defense sets forth the judgment dismissing the defense in the prior action. That dismissal was not on the merits. There was no final adjudication of any question of fact or law except that under the allegations of the complaint the plaintiffs could not show

that they were damaged by the alleged breach of contract. We have in the subsequent case of *Richard* v. *Credit Suisse* (242 N. Y. 346) pointed out the narrow scope of our earlier decision: " *Richard* v. *American Union Bank* (241 N. Y. 163) did not hold that upon sales of foreign money there cannot in any circumstances be a recovery of damages occasioned by delay. The case went upon the narrow ground that the pleader by the form of his complaint had excluded the conclusion that damage had been suffered."

Obviously upon no possible theory can the prior judgment bar a recovery in a new action in which the complaint is sufficient. True, in determining the sufficiency of the new complaint, the court will follow the same rules and principles which guided the majority of the court in its earlier decision. The prior decision may embody authoritatively the test which the court should apply when the sufficiency of the new complaint is questioned; it may form the starting point for judicial examination of the sufficiency of the complaint; it cannot of its own force preclude such examination in the new action.

The earlier complaint sought only damages for delayed performance. It admitted that the delayed performance had been accepted. Therefore, there could be no rescission of the contract and recovery of the consideration paid. The plaintiffs' remedy, if any, was confined to an action for damages. Here the complaint is perhaps equivocal. It contains allegations appropriate to an action based upon a rescission of the contract, and there is no unambiguous allegation that delayed performance was accepted. Since, however, it appeared upon the argument of this appeal that the plaintiffs probably did accept such delayed performance and that they expect to prove under the complaint only a cause of action for damages for delayed performance, we may, at least for the present, confine our consideration to the question of whether the complaint sets forth such a cause of action.

The conclusion in the earlier case rested largely, if not

solely, upon the premise that " presumably the plaintiffs when they made a contract to obtain foreign money or credit abroad intended to use it as money in the country where it is the recognized medium of exchange. Fluctuations in the value of the money when measured by currency of this or any other country may not affect the use for which plaintiffs are presumed to have intended it."

Allegations contained in the complaint in this action which were omitted from the complaint in the earlier action conclusively rebut the presumptions upon which the earlier decision rested. They show that the plaintiffs did not intend to use the money in the country where it is the usual medium of exchange, and that fluctuations did affect the use for which plaintiffs actually intended it. Both the plaintiffs and the Nemeth State Bank were engaged in the business of foreign exchange in the city of New York and the plaintiffs intended to use that credit when established in that business.

" Said business consisted in the selling of foreign money or currency and the delivery thereof at specified times at specified banking houses in foreign countries by depositing to the credit of the purchaser such foreign money or currency which the purchaser desired for his use thereat * * *. In order to enable such sales to be made, a dealer in foreign exchange was required to have on deposit in banks in foreign countries the currency so dealt in and such deposits and credits were established by him by his purchasing such exchange on such banks from other persons or corporations having same on deposit in such foreign banks. * * * A seller of foreign exchange in the United States received as his consideration for such sale the value of such foreign currency at the time of the sale in dollars and that a purchaser thereof paid as such consideration in dollars, the value of such foreign currency at the time of sale; that the foreign money so bought and sold fluctuated from day to day and from hour to hour as measured by American money * * * during every minute of the

business day. * * * That plaintiffs only purchased foreign exchange for the purpose of having it available for resale as aforesaid, and this fact was known to the said Nemeth State Bank, at the time of the making the agreements hereinafter referred to."

Money, in the country where it is current, is both a measure of value and a medium of exchange. In other countries it is a commodity bought and sold in the market and its value fluctuates in the market like that of other commodities. Damages for failure to perform a contract for the delivery of a commodity are measured by the value of performance at the stipulated time. Delayed performance of the contract may be less valuable than the performance as stipulated. Though a buyer of a commodity may accept delivery of the commodity after the stipulated date, he may still retain his right of action for damages caused by delay. (Pers. Prop. Law [Cons. Laws, ch. 41], § 130.) At least where the commodity is purchased for resale and has a fluctuating market value the damages suffered by delayed delivery of the commodity are measured by the difference between the market value at the stipulated time of delivery and the market value at the time of the delayed delivery.

Here though the purchase was made in America where Roumanian money is a commodity of fluctuating market value, delivery was to be made in Roumania where it is a medium of exchange, which from its nature cannot have a market price there. The problem presented is whether for the purpose of this contract the money or credit delivered in Roumania may still be regarded here as a commodity with a fluctuating market value.

Fluctuations in the value of Roumanian currency when measured in dollars might not affect its value as a medium of exchange in Roumania. So, at least, the court held in the prior action. In the opinion of the court the conclusion followed that, in the absence of special circumstances showing that the purchase of money

or credit for delivery in Roumania was made for some use in which its value would continue to be measured by its market price here, fluctuations in such market price would furnish no economic measure for damages for delay. The allegations of the complaint in the present action show that the parties dealt in foreign moneys or credits as a commodity. The price was fixed by the value of the foreign money or credit in the market here. Both parties understood that the commodity was purchased here for resale as a commodity in the market here. The fact that the commodity purchased for resale here might in a foreign country be used as a medium of exchange becomes irrelevant when it appears that the parties understood that the purchase was made by the plaintiffs not for use in Roumania but for resale here.

The value of performance at the stipulated time of delivery was fixed by the price of lei at that time in the market here. Increase in the market price, after default in delivery, could not increase the plaintiff's damages. According to the complaint the Nemeth State Bank and the defendant chose to delay delivery till the value to the plaintiffs of performance of the contract and the cost of performance to the defendant had decreased. The defendant has retained in the form of profit the resultant difference. To that difference the plaintiffs are entitled as damages. If the contract had been performed according to its terms and the foreign moneys or credit delivered at the stipulated time, the buyer would have assumed the chance of profit and the risk of loss from fluctuations in the market price thereafter. By delay in delivery the seller has retained the profit created by intervening fluctuations and has imposed a loss upon the buyer. For the loss so imposed the buyer is entitled to damages. It follows that the complaint in the present action sufficiently alleges a cause of action for damages suffered by delay in performance of the contract even if the plaintiffs cannot prove a rescission of the contract.

No extended analysis of the other five defenses in the answer is necessary. Since the judgment in the prior action was not on the merits, the plaintiffs' cause of action was not barred till one year thereafter. (Civ. Prac. Act, § 23.) The other defenses on their face are plainly insufficient to defeat the plaintiffs' cause of action for damages if all the allegations of the complaint are proven. True, in the fifth affirmative defense, and perhaps in some of the other defenses, the defendant has alleged facts which if proven at the trial may demonstrate that plaintiffs' alleged cause of action is without substance. In that defense the defendant alleges in effect that the seller tendered performance of the contracts at the stipulated time, but that plaintiffs' agent to receive delivery failed to accept such performance. Upon this motion the court must assume the truth of the allegations of the complaint that the seller agreed to *establish* a cable transfer of 2,000,000 lei to the account of the plaintiffs in a named bank, and that the seller " had no credit or lei deposits with the bank for two million lei or any part thereof and did not purchase a transfer of such two million lei by cable or otherwise for the purpose of making available to these plaintiffs a credit of two million lei or any other sum with the said bank * * * and wholly failed and neglected to establish or effect a credit in favor of these plaintiffs with said bank."

It may be that upon the trial the proof will not sustain these allegations or some of them. Then the court must pass upon the legal consequences of the facts established by the proof. If, as we must assume, the material allegations of the complaint are true, then the allegations contained in the fifth defense cannot be true. Under a denial of the material allegations of the complaint the defendant might introduce any relevant evidence which would tend to show the falsity of the allegations of the complaint. The defendant cannot change argumentative denials into an affirmative defense by pleading them

affirmatively. If the plaintiff established its cause of action as alleged, then the affirmative defenses must fall. That is all that we may now pass upon.

The order should be affirmed, with costs, and the questions certified answered " No."

CARDOZO, Ch. J., POUND, KELLOGG, O'BRIEN and HUBBS, JJ., concur; CRANE, J., not voting.

Order affirmed, etc.