## VERNON LUMBER CORPORATION v. HARCEN CONST. CO.

### No. 263.

Circuit Court of Appeals, Second Circuit.
May 15, 1946.

Max Ornstein, of New York City, for plaintiff-appellant.

Nathan Walker, of New York City (Gresser & Walker, of New York City, on the brief), for defendant-appellee.

Before SWAN, CLARK, and WOOD-BURY, Circuit Judges.

CLARK, Circuit Judge.

In this action for a balance due on a contract for the purchase of lumber, the amount, except for a minor issue involving a question of discount, was stipulated near the beginning of the trial; and the controversy centered upon defendant's counterclaim for damages for plaintiff's failure to make deliveries of lumber as agreed. There was no question that plaintiff had not made the deliveries called for by the original contract; but in its reply, plaintiff asserted that its supplier had failed it, and claimed to show that this was due to War Production Board priorities amounting to a frustration of the contract, and that by contemporaneous oral agreement delivery to defendant was conditioned upon delivery by this supplier to plaintiff. The trial court on preliminary motion struck these defenses from the reply, D.C.E.D.N.Y., 60 F.Supp. 555, but declined to strike a claim for reformation of the contract to incorporate the alleged oral agreement. On trial before another judge—continued to the court after a jury trial was waived during the course of the trial itself—the court dismissed the claim for reformation, and found for the defendant on the counterclaim with damages in the amount of $3,092.15, thus reducing recovery from $5,242.15, the balance found due for the delivered lumber, to $2,150.

■ Plaintiff's appeal challenges the award of damages upon the counterclaim. It does not now reassert the stricken defenses, or contest denial of reformation, but relies particularly upon waiver of nondelivery. Defendant asserts that this cannot now be asserted, since plaintiff did not plead it as an affirmative defense, Federal Rules of Civil Procedure, rule 8(c), 28 U.S. C.A. following section 723c; and the parties make vigorous and opposing claims as to the effect of an indirect reference to waiver in plaintiff's amended reply. But we do not think we need pass upon that issue of technical pleading, since the evidence bearing upon the waiver issue was freely received and considered. Indeed, defendant's counsel admitted during the trial that it was one of the major defenses to the counterclaim. Hence it was before the District Court as it is before us on appeal. F. R. 15(b).

■ Plaintiff claims "waiver as a matter of law" both because of defendant's acceptance of lumber after the date set for completion of the contract and because of defendant's execution of certain documents, including bills of sale, to be held in escrow until payment for the lumber covered by them. But we are clear under the circumstances that there were presented issues of fact for the trial court, which we may not reverse unless clearly erroneous. Indeed, waiver of this sort appears almost invariably as an issue of fact, depending upon the parties' conduct; thus compare Champion Spark Plug Co. v. Automobile Sundries Co., 2 Cir., 273 F. 74; Alsens American Portland Cement Works v. Degnon Contracting Co., 222 N.Y. 34, 118 N.E. 210; Lord Const. Co. v. Edison Portland Cement Co., 234 N.Y. 411, 138 N.E. 39. Thus, some review of the facts becomes necessary.

About June 25, 1943, plaintiff and defendant entered into a contract by which the former agreed to sell and deliver to the latter some 798,846 feet of lumber at $58.50 per thousand, shipments to start from the date of signing the contract and to be made proportionately at least every two and one-half weeks until completion of deliveries on September 10, 1943. Prior to the making of this contract, defendant had entered an agreement with Hamilton Gardens, Inc., for construction of a large war housing project, occupying a seven-acre tract and accommodating 174 tenants. There is no dispute that the contract with plaintiff was made expressly to obtain lumber for this project or that defendant in-

formed plaintiff of the extensive nature of the construction and the consequent urgency of its need.

Plaintiff's default was, however, immediate. True, over the entire period it delivered a total of 403,209 feet; but it never forwarded the required proportion of lumber due in any installment period. Defendant made frequent demands for delivery; and in mid-August, plaintiff—in response to one such request—definitely informed it that compliance with the terms of the contract was impossible. According to defendant's president, it also advised him to purchase his requirements elsewhere; but this is strenuously disputed by plaintiff. In any case, during the period between August 23 and September 3, defendant did make substantial outside purchases at prices well in advance of the contract rate. The lumber as obtained proved insufficient, however; and at various times after September 10, defendant made purchases from the plaintiff, totalling about 131,377 feet. It is plaintiff's contention that these purchases, made subsequent to the date fixed for completion of the contract, constituted a waiver of the time requirement so as to defeat the counterclaim here asserted. We do not agree.

Defendant's right to recover damages arose immediately upon injury from plaintiff's breach of contract. Far from constituting a waiver of this right, its subsequent actions indicate the fullest realization of it and intent to assert it. Thus, on August 19, just a few days after plaintiff's announcement of its inability to complete shipments, defendant sent a registered letter referring to its previous objections to delay, stating that its housing project would come to an immediate halt if the lumber contracted for was not delivered and informing plaintiff that its efforts to buy elsewhere had proved unsatisfactory in view of the higher prices demanded. The letter concluded significantly, "We are writing you this letter in order that there will be some record between us of the events which have occurred since your dealer has failed to complete his shipment to you and since you have failed to complete your contract with us." Further, there was testimony by defendant's president that he asserted a claim of around $5,000 to several members of plaintiff's firm before September 20, and by his brother, also interested in the business, that he had orally informed plaintiff of the injury as early as August.

Thus plaintiff knew not only of its own breach, but of defendant's reaction to it as a breach; it knew defendant's precarious position and, as its president admitted, that defendant was buying lumber elsewhere. Upon the facts, the court was justified in finding that defendant's acceptance after September 10 of urgently needed lumber was not a waiver of rights previously matured and asserted.

Plaintiff lays much stress upon a phone conversation between its president and the brother of defendant's president in which the latter is represented as having told the former "not to worry" about the letter of August 19, but to go ahead and make shipments and they would be paid for. But a vague statement not to worry about a letter does not compel a conclusion that the position taken in the letter is retracted. At this time, several weeks before the date set for completion of the contract, defendant seems entirely justified in telling the plaintiff to continue shipments. We see nothing in this case, therefore, to compel the court to find it an exception to the general rule that acceptance of a late delivery will not bar a cause of action for the delay. Mawhinney v. Millbrook Woolen Mills, 234 N.Y. 244, 137 N.E. 318; Richard v. American Union Bank, 253 N.Y. 166, 170 N.E. 532, 69 A.L.R. 667; Dibble, Seedgrower, v. Jones, 130 Misc. 359, 223 N.Y.S. 785.

Of even less merit is plaintiff's attempt to find waiver in defendant's execution of certain escrow documents. The papers relied on were all executed over the period from July 28 to October 25, and all stated that defendant had received from plaintiff a statement and a signed bill of sale which was to be held in escrow until paid. The mere exposition of their contents indicates their complete irrelevance to defendant's right of offset. On their face, they were acknowledgments of an

obligation to pay for goods accepted, and not releases of a claim of damages for non-delivery. Nor do we see anything compelling a contrary conclusion to that made below in defendant's full payment of some invoices after September 3 or its later agreement to an increase of $4 per thousand for lumber thereafter delivered. Under the circumstances there was no default by defendant in refusing to accept a tender of some 197,000 feet late in October.

We agree also with the court's rejection of plaintiff's argument that defendant failed to perform certain so-called "conditions precedent" to recovery. It contends that § 130 of the N. Y. Personal Property Law, Consol. Laws, c. 41, required defendant to send it special notice of its claim at the time of receiving goods after September 10. But that statute provides only that a buyer who accepts a late shipment of goods must notify the seller within a reasonable time if he intends to claim damages for the delay in its delivery, and is clearly irrelevant to the present case where no damages were claimed or awarded for any shipments actually received.

Nor does defendant's failure to complete its payments punctually preclude recovery. The contract provided that the seller might withhold shipments or cancel the unshipped balance; and it may be, as defendant argues, that this provision was an exclusive one, restricting the seller's rights. In any event, however, plaintiff itself was already in default before any payments fell due; it accepted defendant's checks as full satisfaction of the debt. And having declined to perform on entirely different grounds, it cannot now employ delay in payment as a defense. Bernhardt Lumber Co. v. Metzloff, 113 Misc. 288, 184 N.Y.S. 289. As a matter of fact, defendant never failed to make at least delayed payment of any invoice until after September 10, when its offsetting claim was well established.

The amount of damages appears to have been appropriately found upon the facts presented. Plaintiff objects that the number of feet for nondelivery of which it was charged was not reduced by the tender of 197,000 feet made by it in late Oc-

tober. But, as stated above, defendant was no longer under an obligation to accept. Nor can plaintiff take advantage of the 7%-more-or-less clause in the contract to reduce the amount contracted for. The evidence as to whether this provision was inserted for the benefit of seller or buyer was in such sharp conflict that the trial court was justified in disregarding it altogether and calculating the recovery on the basis of the stated footage. Since the lumber delivered before September 16 was sold at $58.50 and that delivered afterwards at $62.50, the court was not in error in employing both figures proportionately to find the contract price.

Judgment affirmed.