**EL PASO ELECTRIC CO. v. SURRENCY**
(two cases).

Nos. 3611, 3612.

Circuit Court of Appeals
Tenth Circuit.

Aug. 9, 1948.

Rehearing Denied Aug. 30, 1948.

A. K. Montgomery, of Seth & Montgomery, all of Santa Fe, N. M., for appellant.

W. C. Whatley and R. C. Garland, both of Las Cruces, N. M., for appellee.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

These actions were brought to recover damages for personal injuries suffered by appellee in an automobile collision and for certain expenses arising therefrom and for exemplary damages. The action in Number 3611 was brought by appellee in his individual capacity and the one in Number 3612 was instituted in his name as administrator of the estate of Willie Hassell Surrency, deceased. The two cases were consolidated for trial and were tried to a jury. In each case a verdict was returned for the plaintiff and judgment was entered thereon from which this appeal was taken. The parties will be referred to as they appeared in the court below.

The six assignments of error relied upon for reversal can be summarized and will be treated as follows:

1. The court erred in refusing to sustain defendant's motion to dismiss at the conclusion of plaintiff's evidence and in refusing to sustain its motion for a directed verdict at the conclusion of all the evidence.

2. The court erred in its instruction to the jury.

The allegations of the two complaints are substantially the same. In substance, plaintiff alleged that on the morning of September 26, 1945, he, accompanied by his wife, Willie Hassell Surrency, now deceased, was driving his wife's Buick car along U. S. Highway 80, a four lane paved highway approximately forty feet wide, the same being a transcontinental highway carrying heavy traffic; that when he was about a mile south of Bernino, New Mexico, and while on his right side of the road, a vehicle operated by Leon Hammett, accompanied by U. S. Corbin, employees of the defendant, without warning, negligently turned directly across the highway into the path of plaintiff's automobile in such close proximity that he had no time nor opportunity to avoid a collision with defendant's automobile and that plaintiff's automobile crashed into defendant's vehicle, a Chevrolet pickup truck, with such force and violence as to completely demolish both cars. The complaint alleged injuries sustained by his wife from which she died, and severe injuries to himself.

The allegations of the complaint charging negligence against the defendant are as follows:

"That after plaintiff's release from the hospital and upon investigation of the facts, he learned that the pick-up truck with which he collided was the property of the defendant, El Paso Electric Company, and that it was so defective and worn as to be unsafe for use on the highways, in that the mechanism thereof was in such condition that the vehicle could not be steered with any degree of certainty, and that such condition of said vehicle was at and prior to the time of said collision known to the employees and officials of the defendant company, notwithstanding which they continued to use the said vehicle and to drive it upon the highways knowing its unsafe condition and that the cause of such vehicle turning directly into the path of the plaintiff's vehicle was the impaired and delapidated and unsafe condition of the defendant's said pick-up truck, and the proximate cause of the injuries and damages to the plaintiff was the negligence of the defendant, its agents, servants, officers and employees in operating and causing and permitting such vehicle in its impaired and delapidated and unsafe condition to be driven over the highways of the state of New Mexico."

At the trial plaintiff testified that on the morning of September 26, 1945, he was driving the Buick car along Highway 80 in a southerly direction on the right hand side of the road at a speed of approximately 45 miles per hour; that he and his wife were a short distance out of Las Cruces and that there was no congestion of traffic on the highway. He testified that he had no recollection of what happened; that his

last distinct recollection was that there was no apparent danger of any impending collision with another car and that his next recollection was waking up from a period of unconsciousness on the shoulder of the highway. Apparently the shock and injury which he suffered blacked out any recollection of what preceded the collision. Jack Taylor, a plaintiff witness, testified that he had worked for the defendant until about three days before the accident when he quit after having given notice to that effect. He testified that nearly every day that he worked for the defendant he drove the pickup truck in question; that the truck was worn out; that the wheels would shimmy; that the back springs were weak and would throw you out of control; that "you would be driving along and hit a place like that and the wheels would start shimmying and you would have to slow up. And at any time at all it would go out of gear." He testified that this was the condition of the truck at the time he quit three or four days before the accident. There seems to be no dispute in the testimony that the truck had not been repaired after he quit and prior to the accident. Taylor testified further that Mr. Breedlove, defendant's manager of all work, knew the condition of the truck and also that Corbin knew its condition. He testified that he and Hammett roomed together and discussed the condition of the truck. He also testified that he had talked with Hammett and Corbin just a few minutes before they left on the fateful trip; that they were in the pickup truck at the time it left town and that Leon Hammett was driving. Taylor followed them on a mission in the course of his employment and came upon the scene of the accident a few minutes after it occurred. He testified as to the physical appearances at the scene of the accident but since these conditions are not in dispute, his testimony in that respect will not be set out.

R. A. Durio, an automobile mechanic, testified for the plaintiff. He testified that he examined the front end of the Chevrolet pickup on the day of the trial; that his examination showed that the left front spring was broken between the axle and the anchor; that the left king pin had considerable wear and that the right king pin was

not quite so bad; that when the pins become worn it has a tendency to make the car become a "road wanderer." On cross examination, he testified that in his experience he had seen cars with "as badly or worse worn king pins than that in service."

Alex E. Hood, another witness for plaintiff, testified that he was an automobile mechanic; that he examined the front end of the Chevrolet pickup including the steering apparatus, front springs and king pins. He testified that the "left king pin was a little bit loose, the right king pin was O.K. The spring on the hand side was broken, the main leaf was broken in back of the axle." On cross examination he testified that the left king pin was not in dangerous condition. He also testified that a collision such as the one in question might have caused a blowout in one or more tires.

At the conclusion of plaintiff's evidence, defendant moved for a dismissal on the grounds that there was no testimony to support a verdict and judgment against it. The motion was overruled. The defendant thereupon, through its employees and local garage operators, presented evidence contradicting that offered by plaintiff and tending to establish that the pickup in question was in good mechanical condition prior to the accident; that at regular intervals of 1000 miles or about every three weeks the pickup was taken in for a check up, inspection and grease job; that garage men were given instructions when working on it to do what was needed to be done. Defendant also offered the testimony of Ramon Morales, an eye witness to some of the events immediately preceding the collision. He testified that at the time of the accident he was traveling north on the highway in question; that there was a truck ahead of him going in the same direction; that he was driving at a speed of from 30 to 35 miles when the Chevrolet pickup in question, traveling at a speed of from 40 to 45 miles, passed him going in the same direction. He testified that after passing him, the pickup went back into its lane and started to pass the truck in front and swerved over to the left, clear across the road. There also was testimony that the right rear tire of the pickup truck was flat after

the collision and that there were tire marks or skid marks left by the pickup truck.

The trial court correctly overruled defendant's motion to dismiss at the conclusion of plaintiff's testimony. Plaintiff's own testimony is not very helpful in considering this question owing to the fact that his injuries deprived him of all recollection of events preceding the collision. His testimony does establish that he was driving in a proper and orderly manner and was in his proper lane on the highway. Taylor's testimony, supported somewhat by that of the two mechanics, however, is sufficient to take the question of negligence on the part of the defendant to the jury. The attack leveled at his testimony goes only to its weight, and not to its competency. The contention that the physical facts conclusively contradict his testimony is not well taken. Defendant takes the position that since the right rear tire was flat and since there were skid marks on the pavement, the collision was caused by an unavoidable accident. This position is predicated on the assumption that the tire blew out and caused the car to go out of control. All of this, however, is based upon speculation. There is no direct evidence that the tire did blow out or if it did whether the blowout was of such nature as to cause the car to go out of control without negligence on the part of defendant's employees. Defendant did not call Leon Hammett who was driving the pickup at the time and who at the time of the trial was still employed by it. Whether the reasons assigned for not calling him to testify to what took place are sufficient, is beside the point. In the absence of production of such direct testimony as to what occurred immediately preceding the accident, speculation from the meager physical facts is not sufficient to destroy the probative value of Taylor's direct and positive testimony regarding the condition of the pickup truck in question. The motion for dismissal was properly overruled.

It is next contended that the motion for a directed verdict at the conclusion of the trial should have been sustained. This position also is not well taken. All that can be said is that there was a clear conflict in the evidence regarding defendant's negligence which was for the jury's considera-

tion. Furthermore, the evidence of defendant's witness Morales strengthened plaintiff's case. As pointed out, he testified that defendant's pickup truck passed him going about 40 or 45 miles an hour; that it then pulled back into the lane of travel next to the dividing line dividing north and south bound traffic, and then attempted to pass the truck in front on the left side and swerved clear across the road into the lane of traffic for cars going south. It may be that defendant's employees deliberately attempted to pass this truck by going into the south bound lane of traffic and thus drove directly into the path of plaintiff's oncoming car. On the other hand, their pickup might have been forced across the road by a violent blowout and under such conditions as made it impossible for them to control it. There is no direct evidence to this effect and the question of whether under all the evidence the accident was unavoidable or was due to the negligence of the defendant and its agents was properly submitted to the jury.

It is, however, contended that plaintiff's cause of action was predicated on the sole ground that defendant negligently continued to operate a truck in a mechanically dangerous condition thereby causing the injuries complained of and that plaintiff did not set out as an element of his cause of action negligence on the part of defendant's agents in driving the truck. This is, however, not a case in which the plaintiff adduced evidence not within the issues of the complaint. This witness was produced by the defendant and this particular evidence was elicited on direct examination by defendant's own attorney. No objection was made thereto. The court was not asked to strike it from the record. It was received and considered the same as other testimony.

Rule 15(b), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, provides that when issues not raised by the pleadings are tried by express or implied consent of the parties, they will be treated in all respects as if they had been raised in the pleadings, and the pleadings may be amended to conform thereto. New Mexico likewise has held that where a

material fact omitted from the pleadings is litigated without objection as if said fact had been put in issue by the pleadings, it is the duty of the trial court to amend the complaint in aid of the judgment so as to allege the omitted fact. See Canavan v. Canavan, 17 N.M. 503, 131 P. 493, Ann. Cas.1915B, 1064. So likewise the Federal Courts have held that where evidence was received without objection, the issue raised thereby was before the trial court for determination. See Vernon Lumber Corp. v. Harcen Const. Co., 2 Cir., 155 F.2d 348; Scott v. Baltimore & O. R. Co., 3 Cir., 151 F.2d 61; Franklin v. Columbia Terminals Co., 8 Cir., 150 F.2d 667.

In New Mexico an immaterial variation between the pleadings and the proof will be disregarded. A material variation has been defined as one which misleads the adverse party to his prejudice in maintaining his action or defense. See Epstein v. Waas, 28 N.M. 608, 216 P. 506. Since the defendant itself brought out this evidence it could not have been misled thereby. Since this evidence was brought out by the defendant itself and no move was made to eliminate it from the trial, it was properly considered in determining defendant's liability to plaintiff. The evidence, when considered in its totality, presented an issue for the jury's determination.

Complaint is also made of the Court's instruction "that the law of the road forbids the driver of any vehicle overtaking another on the highway to drive to the left of the center of such highway in passing such vehicle unless the highway ahead of him is clear and unobstructed for a distance of at least 500 feet."

Defendant's contention is that since plaintiff's cause of action was predicated solely on the defendant's negligence in operating a dangerous truck upon the highway and did not include any negligence in the operation of the truck by its employees, it was error to give this instruction. But it follows from what we have said in regard to the testimony of defendant's witness Morales that such acts of negligence became a part of the trial and thus required the giving of the challenged instruction. Complaint is also made with regard to other instructions of the court which we do not deem necessary to discuss in detail. In the main, the ground of these objections was that there was no substantial evidence warranting them. It is not contended that the instructions were erroneous if the factual situation warranted such instructions. Since we have concluded that there was a clear conflict in the evidence requiring the submission of the case to the jury, it was the court's duty to give appropriate instructions to guide it in its deliberation. We find no reversible error in the court's instructions.

Affirmed.