Brinton *v.* Land Title Bank & Trust Company, Appellant.

Argued October 7, 1950. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Frederic L. Ballard, Jr.*, with him *Thomas Ebert*, for defendant, Land Title Bank & Trust Co., appellant.

*Robert W. Sayre*, with him *William F. Bohlen*, for defendant, Pennsylvania Company for Banking & Trusts, appellant.

*Abraham J. Levy*, with him *Sidney B. Berg*, for plaintiff, appellee.

OPINION BY ROSS, J., January 12, 1951:

William Lee Brinton instituted separate actions of assumpsit against Land Title Bank and Trust Company and Pennsylvania Company for Banking and Trusts to recover the amounts paid to them for certain franc notes. His amended complaints in both cases allege in substance as follows: He "is the owner and operator of a business specializing in French merchandise" located in Philadelphia. On various dates in November 1944 he purchased at the defendants' foreign exchange departments a number of French francs. On or about June 12, 1945, he received a letter from the

Consulate General of France that the French francs which he had purchased from the defendants could not be accepted in exchange for new French francs until proof was submitted that the francs had been legally exported from France. Thereafter, on June 20, 1945, he delivered the francs to the Consulate General and received an official receipt for the same. Later, February 23, 1946, he was advised by the French Ambassador to the United States that the only notes which could be exchanged were those which had been exported from France either prior to June 1940 or after that date with a special authorization of the "Office des Changes". He was further advised that since his francs had been purchased over the counter their legal export could not be ascertained, and his application for exchange could not be given favorable consideration unless he submitted proof that the notes presented by him had been legally exported from France. The position of the French Ambassador was based upon French Treasury Department ruling, Ordinance No. 45-1126. Thereafter, plaintiff alleges, he made numerous requests of defendants to secure the necessary proof that the francs had been legally exported, but "the defendant has failed and continues to refuse to comply with this regulation of the French government", and the plaintiff upon this allegation bases his right to recover in these actions. On or about June 4, 1947, the French francs were returned to the plaintiff, and upon each of the francs there was stamped "Non Admis a l'Exchange", thereby rendering them void. Attached to and made a part of the amended complaints are translations of the French decree of September 9, 1939, and of the French ordinance of May 30, 1945. Without setting forth in detail, the provisions of the decree of 1939 prohibited or regulated in war time the *exportation* of capital, and the ordinance of May 30, 1945 required the surrender of outstanding French currency in

exchange for new notes of different appearance, and provided that exchange for new notes would be made *only* if the holder submitted proof that the notes sought to be exchanged had been legally exported from France.

To these amended complaints preliminary objections in the nature of demurrers were filed by both defendants on the ground that the complaints failed to state a cause of action upon which relief can be granted, for the following reasons: (1) The amended complaints do not aver that at the dates on which the francs were delivered to plaintiff by defendant said francs were not valid legal tender. On the contrary, Ordinance No. 45-1126 discloses that the francs did not cease to be legal tender until after May 30, 1945, the date of the ordinance; (2) the amended complaint contains no averments of fact which establish that the defendants were under a duty to ascertain or secure proof that the francs were legally exported from France. By orders of the court below, preliminary objections in the nature of demurrers were dismissed with leave to defendants to file answers. Defendants elected not to file answers, and judgment was accordingly entered in favor of plaintiff against the defendant Land Title Bank and Trust Company in the amount of $700.25, and against the defendant Pennsylvania Company for Banking and Trusts in the amount of $577.48. From these judgments the defendants have taken the present appeals, which have been consolidated for purpose of argument on appeal.

Plaintiff argues, in support of the conclusion reached by the court below, that the French decree of September, 9, 1939, prohibiting the exportation of capital (currency) in war time and regulating exchange operations, cast a "cloud" upon the validity of the francs he purchased. Foreign money, the argument continues, is a commodity and so within the purview of the Sales

Act. It follows, plaintiff concludes, that he is entitled to recover because there has been a breach of the seller's implied warranties of title and fitness for a purpose. It is the position of the defendants, on the other hand, that the French decree of September 9, 1939 was without effect so far as the validity of currency involved is concerned; that the decree sought to discourage the flight of capital by the imposition of sanctions *personal* and *penal* in nature. That being so, defendants conclude, they have fulfilled their sole duty to the plaintiff-buyer—that of providing him with French francs which were legal tender at the time of the sale in November 1944.

The language of the decree itself supports the conclusion that it was not aimed at invalidating outstanding French currency; it prohibits the exportation of French currency except under authorization of the Minister of Finance by persons in France, foreigners with property in France and French nationals residing outside France, and designates certain governmental officers as agents to detect infractions and transmit warrants to the Administration of Finance. There are no provisions in the decree invalidating or rendering void any French currency, and, significantly, the persons to whom the decree is directed are those whose persons or property are subject to the jurisdiction of the French courts. We think it clear that there is no merit in the contention that the franc notes in question were under a cloud existing by virtue of the decree of September 9, 1939.

The sellers having delivered franc notes which were valid legal tender at the time of sale cannot be said to have breached the implied *warranties of title* imposed upon them by section 13 of The Sales Act of May 19, 1915, P. L. 543, 69 PS 122. There remains, however, the question of whether the invalidation of the currency by Ordinance No. 45-1126 of May 30, 1945, some

six months after the sale was consummated, resulted in a breach of the seller's *warranty of fitness for a purpose*. A preliminary hurdle appears immediately in that the definition of "goods" given in The Sales Act excludes "money". (69 PS 337: " 'Goods' include all chattels personal other than things in action and money . . .") There are no cases in this Commonwealth holding that foreign money is a commodity and therefore "goods" within the meaning of The Sales Act. Plaintiff calls to our attention, however, the New York decision in *Melzer v. Zimmerman*, 194 N. Y. S. 222, in which it was held that Austrian kronen contracted to be sold were "goods" within the definition of The Sales Act, and the buyer entitled for breach of such contract to damages based on the cost of securing the kronen at the time of the breach. To the same effect are *Zimmerman v. R. & H. Chemical Co.*, 240 N. Y. 501, 148 N. E. 659, and *Richard v. American Union Bank*, 253 N. Y. 166, 170 N. E. 532. Some doubt is cast upon the doctrine expressed in these cases by the case of *Brown v. Perera*, 176 N. Y. S. 215, wherein it was held that Italian money converted in New York was subject to the rules governing money rather than those governing goods, and by *Reisfeld v. Jacobs*, 176 N. Y. S. 223, in which, although holding that Russian bank notes were "goods" and a sale thereof within the Statute of Frauds, the court found it necessary to distinguish *Brown v. Perera*, supra, by pointing out that the Russian government was defunct and that in order to be money, notes must be backed by the credit of a responsible government.

Assuming, arguendo, that foreign money is a commodity and that transactions related thereto are governed by The Sales Act, the question arises whether the sellers' (defendants') warranty of fitness for a particular purpose was breached. Section 15 of The Sales Act, P. L. 543, 69 PS 124, provides: "Subject to the

provisions of this act and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows: First. Where a buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose." Plaintiff argues that it must have been clear to the defendants that he was not interested in purchasing francs of the French Republic as "keepsakes or as souvenirs", but rather to use them to pay his obligations. Presumably this statement is intended to cover the fact that the amended complaint fails to allege any facts tending to show that plaintiff made known "expressly or by implication" the particular purpose for which the goods were required. The fact remains that for a period of six months after the instant sale the francs *were* fit for the particular purpose; plaintiff could have discharged his obligations with them. The currency involved was legal tender until the ordinance of May 30, 1945 and if plaintiff has suffered a loss, it was occasioned not by any act of omission or commission on the part of the parties with whom he dealt—the defendants—but by the act of a third party, a foreign government in imposing an unreasonable restriction upon the exchange—validation—of the francs.

The judgments for the plaintiff are reversed, and judgments are directed to be entered in favor of the defendants.