754 F.2d 452
 VISHIPCO LINE, Ha Nam Cong Ty, Dai Nam Hang Hai C.T., Rang
Dong Hang Hai C.T., Mekong Ship Co. Sarl, Vishipco Sarl,
Thai Binh C.T., Vn Tau Bien C.T., Van An Hang Hai C.T., Cong
Ty U Tau Sao Mai and Nguyen Thi Cham, Plaintiffs-Appellants,
v.
The CHASE MANHATTAN BANK, N.A., Defendant-Appellee.
 No. 644, Docket 84-7778.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 15, 1985.
Decided Feb. 4, 1985.
 
 Arthur M. Boal, Jr., New York City (Boal, Doti & Larsen, New York City, of counsel), for plaintiffs-appellants.
 Andrew J. Connick, New York City (Paul T. Shoemaker, Milbank, Tweed, Hadley & McCloy, New York City, of counsel), for defendant-appellee.
 Before FEINBERG, Chief Judge, and LUMBARD and KAUFMAN, Circuit Judges.
 IRVING R. KAUFMAN, Circuit Judge:
 
 
 1
 America's military involvement in South Vietnam is more than a decade behind us, but the vestigial effects of the fall of Saigon are still manifest. Today we are called upon to address one of the many commercial disputes produced by that sad experience.
 
 
 2
 We note that this is the second time this case has reached us on appeal. See Vishipco Line v. Chase Manhattan Bank, N.A., 660 F.2d 854 (2d Cir.1981). The action commenced in 1977, when a number of South Vietnamese shipping corporations, including Vishipco Line (the shippers will be referred to collectively as "Vishipco"), filed a complaint in the United States District Court for the Southern District of New York against Chase Manhattan Bank, N.A. ("Chase"). Vishipco sought to recover the dollar value of piastre (South Vietnam's currency) accounts held in Chase's Saigon branch until the sudden closing of that office on April 24, 1975. After an evidentiary hearing, the district court dismissed the action because of the "act of state" doctrine. We reversed, holding that Chase was not relieved of its banking obligations by the collapse of the existing government. We held that the law of New York (as the forum state) should apply and that, pursuant to New York law, Vishipco clearly had demonstrated Chase's breach of contract. We therefore remanded for a determination of an exchange rate to be utilized in valuing piastre accounts in dollars.
 
 
 3
 On remand, Judge Carter conducted a hearing to determine the dollar value of piastres in New York on the date of breach. The court found that piastres had no value in New York on April 24, 1975, and, accordingly, held that Vishipco could not recover any damages. Vishipco timely filed a notice of appeal. For the reasons stated below, we reverse and remand.
 
 I. BACKGROUND
 
 4
 Because the particulars of this dispute were chronicled in our previous opinion, see 660 F.2d 854, familiarity with which is assumed, we need set forth only a brief description of the underlying facts relevant to the precise issue on this appeal.
 
 
 5
 Through its international business dealings, Vishipco received foreign currencies, which it deposited in Chase's Saigon branch.[1] Pursuant to South Vietnamese currency regulations, these funds were converted, at then prevailing official government rates, into piastres and maintained in demand deposit accounts. On the prior appeal, we decided that Chase breached its obligations to the shippers by closing the Saigon branch without affording them an opportunity to withdraw their deposits, or obtain payment at an alternative location. We remanded with instructions to follow the currency-conversion rule employed by New York courts, pursuant to which recovery in United States currency is to be measured by the dollar value of the piastre on the date of breach. See Hughes Tool Co. v. United Artists Corp., 279 A.D. 417, 110 N.Y.S.2d 383 (1st Dep't 1952), aff'd mem., 304 N.Y. 942, 110 N.E.2d 884 (1953).[2] Judge Carter informed the parties that he understood our decision to direct him to determine the value of piastres on April 24, 1975 in the lawsuit's forum--New York. Accordingly, he rejected Vishipco's contention that the crucial question was the purchasing power of the piastre in Vietnam.
 
 
 6
 To fix the relevant rate of exchange, Vishipco introduced into evidence an International Monetary Fund publication, widely relied upon by members of the financial community, that reported the April 1975 official rate to be 755 piastres to the dollar. As further support for its position, Vishipco offered testimony by Son Nyuzen, an authority on South Vietnamese tax law, who had been a supervisor of the South Vietnamese Department of Taxation in Saigon from 1973-1980. Son testified that customs duties on foreign imports had been calculated by converting the dollar value of the merchandise (as indicated on the goods' invoices) into piastres, by reference to the exchange rate set by the National Bank of Vietnam. According to Son, this rate remained fixed at 755 piastres to the dollar from April 19, 1975 until September of that year and was unaffected by the change in government that occurred on May 1, 1975.
 
 
 7
 To rebut the validity of Vishipco's purported exchange rate, Chase offered proof that the 755 piastres to the dollar figure represented a fictitious value, and bore no relation to the actual market value of the piastre. Ta Van Tai, a legal researcher and expert on South Vietnam's foreign currency control regulations, testified that in April 1975 the piastre was a "blocked" currency. Vietnamese businesses and citizens were not permitted to exchange piastres for dollars at the official rate except in very limited circumstances not relevant to Vishipco's case. Those transactions not sanctioned by the regulations were governed by the vagaries of the unofficial market. One of Chase's employees in Saigon at the time of the branch office closing testified that he participated in one such unofficial exchange in April 1975. He further recalled that these transactions were not exceptional, but were indicative of a well orchestrated underground market.
 
 
 8
 Turning to the value of piastres in New York, Chase's currency trader testified that there had never existed--either during or before the spring of 1975--a market in New York for the South Vietnamese piastre.
 
 
 9
 Judge Carter found that the official exchange rate of 755 piastres to the dollar was insignificant for the purpose of valuing Vishipco's damages. The judge emphasized that South Vietnamese currency restrictions precluded Vishipco from utilizing this rate. Moreover, it found that "[i]n April, 1975 with the imminent fall of the Saigon government on the horizon, the unofficial exchange rate was considerably higher." Pursuant to his reading of Hughes Tool, supra, the judge then examined the market in New York, and found that "the unchallenged evidence showed that piastres had no value in New York in April, 1975 or thereafter." Accordingly, he held that the shippers could not recover any damages.
 
 II. DISCUSSION
 
 10
 Our analysis must commence with a review of the relevant New York law concerning contracts involving foreign currency. In actions brought to recover sums expressed in foreign money, the obligation--whether characterized as an unpaid debt or a breach of contract--is treated as a promise to deliver a commodity. See Richard v. American Union Bank, 253 N.Y. 166, 174, 170 N.E. 532, 535 (1930); Kantor v. Aristo Hosiery, 222 A.D. 502, 509, 226 N.Y.S. 582, 584 (1st Dep't.), aff'd, 248 N.Y. 630, 162 N.E. 553 (1928).
 
 
 11
 In these cases, damages are calculated by reference to the fair market value of the foreign currency on the date of breach. See Hoppe v. Russo-Asiatic Bank, 235 N.Y. 37, 39, 138 N.E. 497, 498 (1923). This "breach-day rule" is animated by the aggrieved party's right to receive "compensation measured by the purchasing power of the foreign currency on the day he was entitled to receive it." Kantor, supra, 222 A.D. at 504, 226 N.Y.S. at 584. Because recovery can be rendered only in the currency of the forum, courts are required to ascertain a figure in that currency representing the equivalent value of the amount of foreign funds in question. See Sokoloff v. National City Bank, 250 N.Y. 69, 82, 164 N.E. 745, 750 (1928). Such a determination requires an assessment of the actual costs of and opportunities for exchange at the time and place of the breach. Where local currency restrictions would prevent a party from converting its money into dollars, New York courts have been disinclined to employ "official" exchange rates, seeking instead to appraise realistically the relative value of the currencies. See Hughes Tool, supra, 279 A.D. at 421, 110 N.Y.S.2d at 386.
 
 
 12
 These arid legal principles offer precious little guidance when viewed in a vacuum; their significance is manifest only by application to a particular factual conundrum, such as the one at hand. Relying on the figures reported by the International Monetary Fund, Vishipco maintains that the applicable rate of exchange to be utilized in figuring damages rate of exchange to be utilized in figuring damages must be 755 piastres to the dollar. We disagree. As the testimony adduced at trial demonstrated, this figure represents an exchange rate fixed by the Vietnamese government for certain specified transactions, and is not applicable in all situations. Vishipco's demand deposit accounts were in piastres, and the record does not indicate (nor does Vishipco now contend) that, had Chase released the funds before closing its Saigon branch, Vishipco could have secured dollars at the official rate.[3]
 
 
 13
 This situation appears to fall squarely within the rule of Hughes Tool, supra, which mandates that an official rate of exchange should be ignored in appraising damages where that rate "has been established for other purposes and does not apply to [the] transactions in controversy." 279 A.D. at 421, 110 N.Y.S.2d at 386. The district court, however, appears to have erroneously interpreted Hughes Tool to require that only the New York market should be examined in valuing a blocked currency.
 
 
 14
 The approach in Hughes Tool, however, was predicated on an assumption that a market for a foreign currency in fact existed in New York. Moreover, the court was careful to avoid presenting its particular solution as an absolute requirement for future cases:
 
 
 15
 This problem can at present be solved in some instances, by utilizing, as a measure of damage, whatever value there may be in New York of blocked foreign currencies ... Such a market, where it exists, might well furnish a standard of judgment in cases of this type.
 
 
 16
 Id. at 422, 110 N.Y.S.2d at 387. Indeed, the court in Hughes Tool encouraged creative approaches "to discover value under novel and difficult circumstances where that [is] necessary to accomplish justice." Id. at 423, 110 N.Y.S.2d at 388.
 
 
 17
 In sharp contrast to the factual setting in Hughes Tool, the evidence introduced on remand established that no market for piastres ever existed in New York. Accordingly, we believe the district court should have widened the relevant inquiry in an attempt to assure that Vishipco receives "just compensation." Vishipco Line, supra, 660 F.2d at 865 n. 6.
 
 
 18
 We believe the best course is to remand the action for a determination of the true value of the piastre on the date of breach. This approach comports with that employed by New York courts in similar situations. In Sokoloff v. National City Bank, supra, a Russian citizen brought suit against an American bank for breach of contract by the bank's branch office in Petrograd. Against a backdrop of comparable commercial anarchy spawned by the Bolshevik uprising of 1917-18, the bank could no longer continue operations in the Petrograd office. The Court of Appeals held the breach occurred on the date the Petrograd branch ceased to function, and concluded that "damages are to be measured according to the value of rubles [held in demand deposit accounts] as of that date in Petrograd." 250 N.Y. at 82, 164 N.E. at 750.
 
 
 19
 Similarly, by examining the Saigon market, the district court can best evaluate the "purchasing power" of the piastre at the time and place Vishipco would have utilized its account funds, but for Chase's breach. See Kantor, supra, 222 A.D. at 504, 226 N.Y.S. at 584. To this end, the district court should receive whatever information is now available regarding the underground market for dollars in Saigon (to which Chase's witness alluded during the remand proceedings). Moreover, in accordance with New York law, Vishipco will bear the burden of establishing this unofficial rate with reasonable certainty. See Hughes Tool, supra, 279 A.D. at 420, 110 N.Y.S.2d at 385.
 
 
 20
 We do not pretend that the task of valuing piastres in dollars during a time of civil unrest will be an easy one. Mindful of practical encumbrances, and cognizant of the shortcomings of judicial clairvoyance, we urge the district court to pursue an innovative approach to the ordinarily strict principles that govern ascertainment of damages and admissibility of evidence. For example, if there does not exist sufficient evidence to determine the unofficial exchange rate between piastres and dollars in the Saigon market, the district court may wish to examine other markets in which such exchanges occurred (e.g. Singapore, Hong Kong, etc.).
 
 III. CONCLUSION
 
 21
 The judgment of the district court is reversed and the case remanded for further proceedings consistent with this opinion.
 
 
 
 [1]
 An individual appellant, Nguyen Thi Cham, seeks to recover the value of a six-month non-negotiable certificate of deposit issued by Chase's Saigon branch on November 27, 1974. She raises the same points on appeal as Vishipco, though the relevant date of breach for her certificate of deposit was its due date, May 27, 1975
 
 
 [2]
 Our instructions were as follows:
 On remand, the district court will have the task of determining the exchange rate as of April 24, 1975, which should be utilized in converting the corporate plaintiffs' piastre deposits into dollars. There is evidence in the record that the official rate of exchange on April 24, 1975, was 755 piastres to the dollar. Chase will have the opportunity to introduce evidence showing that this rate was artificially low and should be replaced by a higher rate. See Hughes Tool Co. v. United Artists Corp., 279 A.D. 417, 110 N.Y.S.2d 383 (1st Dep't 1952), aff'd mem., 304 N.Y. 942, 110 N.E.2d 884 (1953). Statutory interest on the deposit accounts will be awarded on the dollar amount so found from April 24, 1975.
 With respect to Ms. Cham's CD, which became payable on May 17, 1975, the currency rate prevailing on that date, if one existed, may be used or, if none existed, the last rate in existence prior to that date, with interest from May 17. Here again Chase should have the opportunity to show that because of deterioration in the exchange value of the piastre a different rate should be adopted. The objective, of course, is to award just compensation for the breach.
 660 F.2d at 865 n. 6.
 
 
 [3]
 Vishipco contends that Chase did not sufficiently establish the existence of an exchange rate to rebut the validity of the official rate, and therefore failed to meet its burden of proof. In our prior decision, however, we merely granted Chase the opportunity to enter evidence into the record relevant to the question of the official rate's significance. See 660 F.2d at 865 n. 6. Our citation to Hughes Tool, supra, put Vishipco on notice that it would bear the burden of proof on the issue of establishing the applicable rate of exchange